Earl Q. GRAY, Plaintiff in Error,

v.

OKLAHOMA TAX COMMISSION,
Defendant in Error.

No. 39211.

Supreme Court of Oklahoma.

March 5, 1963.

Earl Q. Gray, per se, Fischl & Culp, Ardmore, for plaintiff in error.

E. J. Armstrong, Moses Frye, Oklahoma City, for defendant in error.

PER CURIAM.

This is an appeal from a ruling of the Oklahoma Tax Commission assessing a tax of $161.94, together with interest and penalties, for use tax upon a purchase of a livestock feed in the sum of $8,097.40. The purchase was made in the State of Texas, and the feed was shipped to the ranch of plaintiff in Johnston County, Oklahoma.

Prior to 1957, livestock feed was subject to a sales tax of 2% upon such feed purchased in Oklahoma. See 68 O.S.1951 §§ 1251 to 1251n. Feed purchased in other states and shipped into the state for con-

sumption was subject to a use tax of 2%. See 68 O.S.1951 §§ 1310 to 1310i. In 1957 the Legislature of Oklahoma repealed the sales tax on feed purchased in the state. The effect of this repeal, if the contention of the Tax Commission is correct, is that the use tax upon feed purchased in other states is still in effect. The contention of plaintiff is that this 2% levy on out-of-state purchases constitutes a levy on interstate commerce and is therefore unconstitutional.

Use taxes upon interstate shipments have been sustained by the United States Supreme Court where enacted to offset a sales tax within the State, thereby doing away with any differential between out-of-state purchases and those within the State. See Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814.

It is asserted by the Commission that "the tax upon the use after the property is at rest is not so measured or conditioned as to hamper the transaction of interstate commerce or discriminate against them."

The fallacy in this contention is readily apparent. If the "use" tax were equally applied to all like products, there could be little objection urged. But where it is placed upon a product purchased without the state with no equalizing tax upon the same product within the state, it is obvious that the tax is wholly one levied because of the point of origin and for no other reason. We cannot agree with the contention that such a levy is not one burdening interstate commerce.

In the case of Southeastern, Inc. v. Oklahoma Tax Commission, Okl., 351 P.2d 739, this court said in regard to this very use tax:

"The use tax is an excise tax which the State is authorized to exact, *in connection with the sales tax,* for the primary purpose of raising revenue for state purposes, and *is designed to prevent consumers from escaping sales tax by going outside of the state and purchasing property and bringing it into the state for use or consumption.*" (Emphasis ours.)

This very language demonstrates that such a use tax is a barrier to bringing in goods from without the State. It can be justified, as held in the Southeastern case, as a means for preventing the escape from a sales tax. But here no sales tax exists, and the reasoning of the Southeastern case ceases to apply. Clearly, the language of the court demonstrates that it is actually a levy on interstate commerce and without the justification existing in that case.

We deem the question conclusively settled by the Supreme Court of the United States in Welton v. State of Missouri, 91 U.S. 275, 23 L.Ed. 347, where the court said in discussing the exclusive power of Congress to regulate interstate commerce:

"That power was vested in Congress to insure uniformity of commercial regulation against discriminating state legislation. It covers property which is transported as an article of commerce from foreign countries, or among the States, from hostile or interfering state legislation until it has mingled with and become a part of the general property of the country, and *protects it even after it has entered a State, from any burdens imposed by reason of its foreign origin.*" (Emphasis ours.)

Again in McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, it is held that state taxes whose tendency is to prohibit interstate commerce *or place it at a disadvantage as compared or in competition with intrastate commerce, or which discriminates against interstate commerce are unconstitutional.*

We are fortified in the above conclusions by the following authorities. In 11 Am.Jur., Commerce, Sec. 108, at page 96, appears this text:

"* * * Thus, a state is without power, by prohibition, regulation or *taxation,* to impose upon the products of other states, brought therein for sale or use, more onerous public burdens than it imposes upon like products of its own territory, or to discriminate, in the matter of trade regulations, in fa-

vor of its citizens and against the citizens of other states or foreign countries. * * *" (Emphasis ours.)

This text is supported by opinions of the Supreme Court holding such a situation violative of the commerce clause of the Constitution.

In the case of Best & Co. v. Maxwell, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275, appears this language in the opinion:

"The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its *practical operation* work discrimination against interstate commerce. * * *" (Emphasis ours.)

Whatever reasoning may be indulged to sustain the statute under consideration, in its final analysis it had but one purpose, to discriminate against products from without the state.

We deem the following quotations from the case of Baldwin v. G. A. F. Seelig, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, to be extremely pertinent:

"Such a power, if exerted, will set a barrier to traffic between one state and another as effective as if customs duties, equal to the price differential, had been laid upon the thing transported.

* * * * * *

"The Constitution was framed under the dominion of a political philosophy less parochial in range. It was framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division.

* * * * * *

" 'A state tax upon merchandise brought in from another state, or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful only when the tax is not discriminating in its incidence against the merchandise *because of its origin in another state.'*

* * * * * *

"Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents."

 We therefore hold that the application of the use tax to livestock feed purchased outside of Oklahoma is under present conditions unconstitutional and that sections 1310, 1310a to 1310i, inclusive, 68 O.S. 1951, are invalid in so far as they levy a use tax upon goods brought into the state which would not be subject to sales tax if purchased within the state.

The order of the Tax Commission levying assessment herein is hereby vacated and set aside.