Ted M. **PHILLIPS**, Petitioner,

v.

**OKLAHOMA TAX COMMISSION,**
Respondent,

**Continental Oil Company and Halliburton Company,** Intervenors,

**The American Cast Iron Pipe Company, Duffens Optical, Inc., Jayhawk Optical Service, Inc., Duffens Contact Lens Co., Inc., Oklahoma Municipal League,** Amici Curiae.

No. 51159.

Supreme Court of Oklahoma.

March 14, 1978.

Rehearing Denied April 5, 1978.

D. Hays Foster, Oklahoma City, for petitioner.

Larry Derryberry, Atty. Gen., James H. Gray, Asst. Atty. Gen., Marjorie Patmon, General Counsel, Clyde E. Fosdyke, Oklahoma City, for respondent.

Guy Clark, Ponca City, for intervenor, Continental Oil Co.

James D. Fellers, John Joseph Snider, Warren F. Bickford IV, Fellers, Snider, Blankenship & Bailey, Oklahoma City, for intervenor, Halliburton Co.; Robert E. Rice, Duncan, of counsel.

James Dudley Hyde, Peter B. Bradford, McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, L. M. Cornish, Jr., Rodney P. Kubat, Glenn, Cornish & Leuenberger, Topeka, Kan., for amicus curiae, Duffens Optical, Inc., Jayhawk Optical Service, Inc., Duffens Contact Lens Co., Inc.

William F. Murray, Jr., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for amicus curiae, American Cast Iron Co.

William G. Paul, Clyde A. Muchmore, Richard C. Ford, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for amicus curiae, Oklahoma Municipal League.

Finis W. Smith, pro se.

SIMMS, Justice:

The question before us is whether the recent increase in Oklahoma's use tax is constitutional. Under 68 O.S.Supp.1977

§ 1402a [1] the tax on tangible personal property purchased outside Oklahoma and brought into the state for use or consumption was increased from 2% to 4%. State sales tax on property purchased within Oklahoma remains at 2%.

Petitioner is a businessman residing and doing business in Seminole County, Oklahoma. He alleges that he purchases equipment and supplies outside the State of Oklahoma for ultimate consumption in the State, some of which are subject to the additional use tax authorized by § 1402a. Petitioner argues that the provisions of § 1402a place a more onerous burden upon products purchased in other states and brought into Oklahoma through interstate commerce for consumption and use than it imposes upon products purchased within Oklahoma.

Petitioner asks this Court to assume original jurisdiction and restrain Respondent, Oklahoma Tax Commission (Tax Commission), from assessing and/or collecting the additional 2% "use" tax, asserting it discriminates against interstate commerce in violation of the Commerce Clause. U.S. Const., Art. I, § 8, Cl. 3.

Respondent Oklahoma Tax Commission has entered a general appearance in the cause and has consented to this Court's assuming original jurisdiction for the purpose of ascertaining the constitutional validity of the additional use tax.

Two intervenors, Continental Oil Company and Halliburton Company, have joined in this action and *amici curiae* briefs have been filed by American Cast Iron Pipe Company, the Duffens Companies (Duffens Optical, Inc., Jayhawk Optical Service, Inc., Duffens Contact Lens Co., Inc.) and the Oklahoma Municipal League.

Intervenors are both Delaware corporations authorized to do business in Oklahoma. They each allege that in order to carry

on their operations in Oklahoma they must purchase millions of dollars worth of goods annually. On those goods purchased in Oklahoma they pay a state sales tax of 2%, as specified by 68 O.S.1971, § 1301, et seq., and prior to the enactment of 68 O.S.Supp. 1977, § 1402a, they paid a co-equal tax of 2% on goods purchased outside Oklahoma and brought into the state for use, as specified by 68 O.S.1971, § 1402. They complain that since the effective date of § 1402a, July 1, 1977, they have had to pay a use tax of 4% on goods purchased outside Oklahoma and that this tax is an impermissible burden on interstate commerce in violation of the Commerce Clause. Both intervenors have paid the tax under protest and have brought suit to recover it.

Halliburton contends that in addition to violating the Commerce Clause of the Federal Constitution, § 1402a also violates Article X, Sections 5 and 20 of the Oklahoma Constitution, as those provisions relate to uniformity and the local purpose proscription.

Intervenors ask this Court to assume jurisdiction on grounds of *publici juris* and for the purpose of avoiding a multiplicity of suits.

Filing *amici curiae* briefs in support of Petitioner's position are American Cast Iron Pipe Company, and the several Duffens Companies, all of whom are foreign corporations doing considerable business in Oklahoma. They argue that their products, which are shipped through interstate commerce into Oklahoma for use here, are unconstitutionally discriminated against by the § 1402a tax of 4% because similar businesses within Oklahoma do not pay an offsetting 4% state sales tax. They urge this Court to declare § 1402a unconstitutional.

The Oklahoma Municipal League, appearing as amicus curiae, argues that its members, comprised of over 300 municipalities,

---

1. H.B.No. 1314, effective July 2, 1977, which provides in pertinent part:

   "A. In addition to tax levied in Section 1402 of Title 68 of the Oklahoma Statutes, there is hereby levied and there shall be paid by every person storing, using or otherwise consuming, within this state, tangible personal property purchased or brought into this state an additional excise tax on the storage, use or other consumption in this state of such property at the rate of two percent (2%) of the purchase price of such property. * * *"

would lose "several" million dollars annually if the questioned provisions of § 1402a were held unconstitutional. The Municipal League assumes the position that there is no unconstitutional discrimination even if a few Oklahoma sales of products were taxed at a lower rate than sales made through interstate commerce.

Respondent Tax Commission contends that § 1402a does not impose an undue burden on interstate commerce and that the enactment, being nondiscriminatory, does not violate the Commerce Clause. Respondent presents two major arguments in support of its position. First, Respondent contends that because many purchases made within Oklahoma are subject to municipal, as well as state, sales tax, there is no "substantial" inequality to interstate commerce. Respondent submits that prior to the passage of § 1402a, Oklahoma had been discriminating against its own citizens inasmuch as some municipalities had enacted a 2% sales tax (pursuant to the Municipal Taxation Code, 68 O.S.1971, § 2701, et seq.) subjecting some in-state sales to 4% tax, while the use tax on interstate commerce was only 2%. Respondent warns that because the limitation on municipal sales tax has been allowed to lapse (68 O.S.Supp.1973, § 1323 et seq.) it is possible that some sales within the state will be subject to a sales tax levy in excess of 4%. Respondent argues that the additional use tax is merely the Legislature's attempt to equalize the interstate tax rate with the greater in-state tax burden. Respondent also asserts that if any discrimination exists, it is only a minimal or incidental discrepancy because of the large portion of in-state sales which are subject to a 4% total sales tax.

Respondent's second contention is that this Court should adopt a construction of § 1402a which will render it constitutional and uphold the tax. Respondent suggests that we may do this, and at the same time eliminate the entire question of whether § 1402a places an onerous burden on interstate commerce, by construing the use tax provisions of § 1402 and § 1402a to apply to the storage, use and consumption of all tangible personal property in Oklahoma, whether purchased *within or without* the state.

## I.

## ASSUMPTION OF ORIGINAL JURISDICTION

Petitioner launches a frontal attack upon the constitutionality of 68 O.S.Supp.1977, § 1402a, effective July 1, 1977. All briefs indicate that by reason of the provisions of the Act in question, the revenues of State and local governments, and the tax liability of persons subjected to the additional 2% tax authorized by § 1402a will annually amount to approximately twelve million dollars. It is therefore urged that judicial resolution of the issues presented in this original proceeding becomes essential to the orderly fiscal management and budgeting of the governmental entities affected thereby.

■ Concluding that the question of constitutional validity of § 1402a of Oklahoma's Use Tax Code is of great public concern, we assume original jurisdiction under the rationale of *Wiseman v. Boren*, Okl., 545 P.2d 753 (1976). In the same vein, this Court held in *State ex rel. Babb v. Mathews*, 134 Okl. 288, 273 P. 352 (1928), *syllabus one*, that:

"Where the constitutionality of an act is questioned and is of such general public importance that there is a general public need for a speedy determination of its constitutionality, this court, in its discretion, will assume original jurisdiction of the question of its constitutionality."

## II.

## APPLICABLE STATUTORY SCHEME OF TAXATION

Before reaching the constitutional challenge to § 1402a presented by petitioner, analysis must be made of the pertinent forms of excise tax presently authorized by Oklahoma's legislative enactments.

There are two levels of sales tax enacted in this State. First, a two per cent sales

tax is levied by the State under the provisions of 68 O.S.1971, § 1304.

Second, under the provisions of the Oklahoma Municipal Taxation Code, 68 O.S.1971, § 2701, et seq., adopted in 1965, many cities and towns have enacted by ordinance a municipal sales tax. In 1973, the Legislature made into law 68 O.S.Supp.1977, §§ 1323–1327, which placed a 2% ceiling on any municipal sales tax imposed by ordinance. Under 68 O.S.Supp.1973, § 1325, however, that ceiling expired on March 1, 1975, by reason of the failure of the Legislature to extend the Act.

■ In discussing sales tax, it must be emphasized that sales tax is imposed upon the sale itself and, to be taxable in Oklahoma, the sale must be made in Oklahoma. *Liberty Steel Company v. Oklahoma Tax Commission*, Okl., 554 P.2d 8 (1976).

Because the question of whether the use tax can be imposed upon property purchased *within* the state has evolved as a significant, although collateral, issue in this litigation we address it here. We reject Respondent's suggestion that §§ 1402 and 1402a should be construed to require assessing and collecting use tax on all property within the state, whether purchased within or without the state.

As opposed to a tax upon a sale within Oklahoma, use tax, according to the title to H.B. 986, Ch. 368, Laws 29th Legislature, 1963 Session Laws, is an "excise tax on the use, storage and consumption of tangible personal property purchased *outside* Oklahoma as herein set forth and apportioning the revenue; * * * "

■ The title to a statute is, of course, a proper guide to ascertaining legislative intent as an aid to statutory construction. *Perry v. City of Oklahoma City*, Okl., 470 P.2d 974 (1970).

The language contained in the body of H.B. 986, codified as 68 O.S.1971, § 1402, reads:

"There is hereby levied and there shall be paid by every person storing, using or otherwise consuming, within this State, tangible personal property purchased or brought into this State, an excise tax on the storage, use or other consumption in this State of such property at the rate of two per cent (2%) of the purchase price of such property; * * * *."

Respondent's contention that use tax applies to in-state purchases is in conflict with the very definition of "use" set forth in 68 O.S.1971, § 1401(i):

"The term 'use' means and includes the exercise of any right or power over tangible personal property incident to the ownership for possession of that property, *except that it shall not include the sale of that property in* the regular course of business." (emphasis added)

Clearly, the same or one transaction cannot be taxed as both a "sale" and a "use".

. Decisions of this Court and the Supreme Court of the United States further negate Respondent's position that §§ 1402 and 1402a could be construed to apply to goods purchased within Oklahoma.

In *Harding v. Oklahoma Tax Commission*, Okl., 275 P.2d 264 (1954) this Court, in addressing the application of Oklahoma's Use Tax Code, said:

"We are of the opinion that it was the intention of the legislature, as expressed in the Act under consideration, that the purchase of tangible personal property *outside* this state be subject to payment of the use tax if such property would have been *subject to the sales tax had it been purchased within the state.*" (emphasis added) at 267.

Recognizing that sales and use taxes are complementary and supplementary to one another, this Court stated in *Southeastern, Inc. v. Oklahoma Tax Commission*, Okl., 351 P.2d 739, 740, 741 (1960):

"The use tax was enacted with intention that the purchase of tangible personal property *outside* this State should be subject to payment of the use tax if such property would have been *subject to the sales tax had it been purchased within this State.* [citing statutes] The use tax is an excise tax which the State is authorized to exact, in connection with the

sales tax, for the primary purpose of raising revenues for state purposes and is designed to prevent consumers from escaping sales tax by going outside of the state and purchasing property and bringing it into the state for use or consumption. * * * " (emphasis added)

Aside from the additional exaction authorized by § 1402a, Oklahoma's basic statutory sales—use tax scheme, as historically interpreted, complies with the underlying rationale established by the solemn pronouncements of our Federal judiciary. In *McLeod v. Dilworth Co.*, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304, (1944) the Court explained:

"A sale tax and a use tax in many instances may bring about the same result. But they are different in conception, are assessments upon different transactions, and in the interlacings of the two legislative authorities within our federation may have to justify themselves on different constitutional grounds.

" * * *

"Though sales and use taxes may secure the same revenues and serve complementary purposes, they are, as we have indicated, taxes on different transactions and for different opportunities afforded by a State." at 322 U.S. 330–331, at 64 S.Ct. 1025–1026.

Resolution of any remaining question as to applicability of the use tax to property in Oklahoma which was purchased in an in-state sale is finalized by 68 O.S.Supp.1968, § 1406, which was amended to require that a retailer or vendor "making sales of tangible personal property from a place of business *outside* this State for use in this State shall at the time of making such sales collect the use tax . . . ."

■ We are therefore compelled to the conclusion that sales taxes and use taxes are meant to be complementary and supplementary, but not overlapping.

## III.

## CONSTITUTIONALITY OF USE TAXES

The Supreme Court of the United States addressed the constitutionality of the imposition of use tax or "compensating" tax levied on chattels purchased outside a state in light of the Commerce Clause in *Henneford v. Silas Mason Company*, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937), and held that:

"Things acquired or transported in interstate commerce may be subjected to a property tax *nondiscriminatory* in its operation, when they have become part of the common mass of property within the state of destination . . . For like reasons they may be subjected, when once they are at rest to a *nondiscriminatory* tax upon use or enjoyment .. . . The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership." 300 U.S., at 582, 57 S.Ct., at 526.

The Court noted that: "a tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate." 300 U.S., at 583, 57 S.Ct., at 527.

■ *Henneford* is therefore ample precedent for the holding that a nondiscriminatory use tax which is complementary to an *equal* sales tax imposed on like goods that are purchased within the state, is not repugnant to the Commerce Clause.

## IV.

## THE EQUALITY TEST

Of grave importance to the resolution of the constitutionality of our Title 68, O.S. Supp.1977, § 1402a, is the conclusion in *Henneford, supra,* that the constitutional validity of a use tax is determined by the measure of "equality" accorded interstate commerce. The Court stated:

"Equality is the theme that runs through all the sections of the statute . . . When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident,

and the other upon another, but the sum is the same when the reckoning is closed . . . In each situation the burden borne by the owner is balanced by an equal burden where the sale is strictly local." 300 U.S., at 583–584, 57 S.Ct., at 527.

One of many of a long line of cases attacking state taxation as unduly burdening interstate commerce is *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963).

In *Halliburton,* Louisiana's use tax was challenged because, although sales tax and use tax were both set at 2%, a different purchase price basis was used for each tax. Sales tax was computed from retail price but the value of labor and shop overhead was additionally included in computing use tax.

In holding the Louisiana use tax scheme violative of the Commerce Clause, the Court speaking through Mr. Chief Justice Warren, stated:

"The conclusion is inescapable: equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state.

"The inequality of the Louisiana tax burden between in-state and out-of-state manufacturer-users is admitted. Although the rate is the same, the appellant's tax base is increased through the inclusion of its product's labor and shop overhead. The Louisiana Supreme Court characterized this discrepancy as incidental. However, *equality* for the purposes of competition and the flow of commerce *is measured in dollars and cents, not legal abstractions.* In this case, the 'incidental discrepancy'—the labor and shop overhead for the units in dispute—amounts to $1,547,109.70. The use tax rate in Louisiana is 2% and has risen in some States to 4%. *The resulting tax inequality is clearly substantial.*" (emphasis added) 373 U.S. at 70–71, 83 S.Ct., at 1204.

In the matter before us, all projections indicate that revenue of over $12,000,000.00 will result solely from the additional use tax provisions of § 1402a. That $12,000,-000.00 is "clearly substantial", can hardly be the subject of debate.

The "equality test" between taxation of out-of-state and in-state commerce was again addressed by the Supreme Court of the United States in 1977 in *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514. That tribunal, speaking through Mr. Justice White, wrote:

"[A]s observed by Mr. Justice Clark . . '[F]rom the quagmire there emerge . . some firm peaks of decision which remain unquestioned' . . . Among these is the fundamental principle that we find dispositive of the case now before us: no State may, consistent with the Commerce Clause, 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.'[2] * * * The prohibition against discriminatory treatment of interstate commerce follows inexorably from the basic purpose of the Clause. Permitting the individual States to enact laws that favor local enterprises at the expense of out-of-state businesses 'would invite a multiplication of preferential trade areas destructive' of the free trade which the Clause protects."

## V.

## APPLICATION OF THE EQUALITY TEST BY THE STATES

The Supreme Court of Oklahoma applied the equality test of *Halliburton* in *Gray v. Oklahoma Tax Commission,* Okl., 379 P.2d 843 (1963), holding:

"Use taxes upon interstate shipments have been sustained by the United States Supreme Court where enacted to offset a sales tax within the State, thereby doing away with any differential between out-of-state purchases and those within the State. See, *Henneford v. Silas Mason*

---

**2.** Citing *Halliburton Oil Well Cementing Co. v. Reily,* supra.

*Co.,* 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814."

" * * *

"If the 'use' tax were equally applied to all like products, there could be little objection urged. But where it is placed upon a product purchased without the state with no *equalizing* tax upon the same product *within* the state, it is obvious that the tax is wholly one, levied because of the point of origin and for no other reason. We cannot agree with the contention that such a levy is not one burdening interstate commerce." (emphasis added) at 844.

The *Gray* Court, in the body of the opinion, spelled out the reasons for the "equality test" which are identical to the reasons expressed by the *Halliburton* Court.

A statutory scheme which discriminated against interstate commerce in favor of local retailers was recently struck down by the Supreme Court of Colorado in *Matthews v. State, Dept. of Revenue,* Colo., 562 P.2d 415 (1977). The Colorado Court applied the fundamental constitutional rule enunciated in *Henneford, supra,* and its progeny, *Halliburton, supra,* that while a use tax may complement a sales tax, the use tax must remain nondiscriminatory as against interstate commerce and intrastate and interstate commerce must receive equal treatment under the overall tax scheme. *Accord: Emmet & Son Oil Supply Co. v. Sullivan,* 158 Conn. 234, 259 A.2d 636 (1969); *Nuckols v. Athey,* 149 W.Va. 40, 138 S.E.2d 344 (1964).

## VI.

### CONCLUSION

The judicially and legislatively mandated purpose of Oklahoma's use tax, 68 O.S.1971, § 1402, was to complement the Oklahoma Sales Tax Code, 68 O.S.1971, § 1301, et seq. It did so by imposing, in respect to purchases made outside the State for use in Oklahoma, a compensating use tax equal to a uniform state-wide sales tax—thereby avoiding discrimination resulting from differing tax percentiles imposed upon pur-

chases of goods in Oklahoma and purchases of goods outside of Oklahoma for use within the State.

■ Title 68, O.S.Supp.1977, § 1402a which increases the two per-cent (2%) use tax by an additional two per-cent (2%), thereby totalling four per-cent (4%) use tax while the state imposes a uniform sales tax of two per-cent (2%), results in an unequal and discriminatory tax burden on interstate commerce in violation of the Commerce Clause of the United States Constitution. By reason thereof, 68 O.S.Supp.1977, § 1402a must be stricken down as unconstitutional.

We are not persuaded by Respondent's contention that the inequality in this sales-use tax scheme is rectified by the existence of the present statutorily enacted optional and non-uniform municipal sales taxes. We reject that argument whether the rate of those municipal taxes be 1%, 2%, or 3%. These facts, among others, lead to our rejection of that position: no municipal sales tax applies outside the corporate limits of a city or town; not all municipalities impose a sales tax; and numerous transactions which take place within a municipality imposing a sales tax are exempt from that tax.

Having determined that § 1402a violates the Commerce Clause, we deem it unnecessary to address Intervenor Halliburton's additional arguments that § 1402a violates due process, constitutes "double taxation" and violates Art. X, §§ 5 and 20, of the Oklahoma Constitution.

While the objects and purposes to which the revenues derived by reason of § 1402a were to be used are of the highest and most noble purposes, our conclusions herein are based on long-standing legal principles enunciated by the highest judicial tribunal in the Land. We are required to impose the rule of law beyond the ends of fiscal expediency.

■ We accept and adopt this final admonition:

"*Stare decisis* should be more than a fine sounding phrase. This is especially true

for us, because 'unless we respect the . . . decisions of this Court we can hardly expect that others will do so.' *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 634, 94 S.Ct. 1895, 1913, 40 L.Ed.2d 406 *(Stewart, J., dissenting).* Accordingly, '[a] substantial departure from precedent can only be justified . . . in the light of experience with the application of the rule to be abandoned or in the light of an altered historic environment' . . ." *Oregon ex rel. State Land Bd. v. Corvallis Sand & Co.,* 429 U.S. 363, 97 S.Ct. 582, 599, 50 L.Ed.2d 550 (1977), *(Marshall, J., dissenting.)*

In the case at bar, neither the "light of experience" nor "an altered historic environment" dictate a departure from the prior decisions of the Courts of this Land.

APPLICATION TO ASSUME ORIGINAL JURISDICTION GRANTED. WRIT OF INJUNCTION ISSUE AGAINST ENFORCEMENT BY RESPONDENT OF THE PROVISIONS OF 68 O.S.Supp.1977, § 1402a.

LAVENDER, V. C. J., and IRWIN, BERRY and DOOLIN, JJ., concur.

HODGES, C. J., and DAVISON, WILLIAMS and BARNES, JJ., dissent.

WILLIAMS, Justice, dissenting.

For the following reasons, I must respectfully dissent.

In my view, the opinion of the majority is based upon a fallacious premise. On its face, 68 O.S.1977 Supp., Sec. 1402a is not limited in application to out-of-state purchases. I therefore believe it applies to both in-state and out-of-state purchases. No limiting language appears in the section itself, or in the title of the legislative act which adopted it, and I know of no constitutional objection to a use tax as such.

The section is made a part of the existing use tax code, and for that reason existing provisions as to exemptions, etc., are applicable. Under 68 O.S.1971, Sec. 1404, the use tax does not apply

"(c) in respect to the use of any article of tangible personal property on which a tax, equal to or in excess of that levied by this Article, has been paid by the person using such tangible personal property in this State, whether such tax was levied under the laws of this State or some other state of the United States. If any article of tangible personal property has already been subjected to a tax, by this or any other state, *in respect to its sale or use,* in an amount less than the tax imposed by this Article, the provisions of this Article shall apply to it by a rate measured by the difference only between the rate herein provided and the rate by which the previous tax upon the *sale or use* was computed. * * *" (Emphasis added.)

The result is that Oklahoma citizens would pay a total use and/or sales tax of 4% and only 4% on all sales, whether in-state or out-of-state, because sales taxes already paid are in effect a "credit" against the 4% use tax. The tax would therefore be mathematically equal in all situations, and there could be no possible objections under either the Interstate Commerce Clause of the United States Constitution or Article X, Section 5, of the Oklahoma Constitution (the uniformity clause).

It is argued in the briefs that (1) the existing Sec. 1402 is admittedly limited to out-of-state purchases and (2) the language of Section 1402a is almost identical with that of Section 1402, and that for these reasons, our Legislature "must have intended" for Sec. 1402a to apply only to out-of-state purchases. Such a conclusion is not justified. Sec. 1402 was not limited to out-of-state purchases by any language in the section itself, but by the legislative title of the act which adopted it. That title was, in pertinent part, "An Act relating to taxation; establishing a Use Tax Code; levying an excise tax on the use, storage and consumption of tangible personal property *purchased outside Oklahoma* * * *". (Emphasis added.) See Session Laws of 1963, Chapter 368, page 692.

The same is not true of the legislative title of the amendatory act which adopted

Sec. 1402a, which was "An Act relating to revenue and taxation; amending 68 O.S. 1971, Sec. 1403; providing for additional state excise tax and apportionment of additional revenues * * * ". No limitation to "property purchased outside Oklahoma" is included. See Session Laws of 1977, Chapter 113, page 326. It also may be noted that by the terms of Sec. 1402a, the additional use tax is levied upon every person " * * * storing, using or otherwise consuming, within this state, tangible personal property *purchased or brought into this state* * * * ". It is not limited to property purchased *and* brought into this state. (Emphasis added.)

It may be observed in passing that, under figures compiled by the Oklahoma Tax Commission and set out in its brief herein, the tax burden of the great majority of Oklahoma taxpayers would not be increased under my view of Sec. 1402a, because they live in municipalities such as Lawton, Oklahoma City and Tulsa, which already levy a 2% municipal sales tax. Thus, they already pay a sales tax totaling 4% (2% state and 2% municipal) and under Sec. 1404, are not subject to the additional use tax levied by Sec. 1402a.

I agree that serious constitutional questions are raised by the "allocation" provisions of sub-paragraphs (1) and (2) of Sec. 1402a, which *may* be in violation of Article X, Section 20, of the Oklahoma Constitution, under which our Legislature " * * * shall not impose taxes for the purpose of any county, city, town, or other municipal corporation * * * ". The highest courts of other states having similar constitutional provisions have held that they apply only to property taxes, and the Oklahoma Supreme Court has, in past opinions, cited with approval holdings to that effect, but without specifically holding that the Oklahoma provisions apply only to property taxes. See, for instance, *State v. Union Cent. Life Ins. Co.,* 8 Idaho 240, 67 P. 647; and *Trustees, Executors' and Securities Ins. Corp., Limited et al. v. Hooton, County Clerk,* 53 Okl. 530, 157 P. 293. Needless to say, even if the "allocation" provisions are unconstitutional as applied to counties, cities and towns, the balance of the act which adopted Sec. 1402a must stand, because it contained a "severability" clause to the effect that "The provisions of this act are severable and if any part or provision hereof shall be held void the decision of the court so holding shall not affect or impair any of the remaining parts or provisions of this act."

In summary: the supposed inequality of taxation which the majority opinion finds fatal to Sec. 1402a results not from any language of the section itself, but from the erroneous holding that it applies only to out-of-state purchases. When the section is properly applied to both in-state and out-of-state taxes, it provides for a plan of taxation which is mathematically equal in all situations, to which no constitutional objections can be raised.

I therefore respectfully dissent.

I am authorized to state that HODGES, C. J., and BARNES, J., concur in the dissenting views herein expressed.