**DOW JONES & COMPANY, INC., Appellant,**

v.

**The STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Appellee.**

**No. 70663.**

Supreme Court of Oklahoma.

Jan. 30, 1990.

Robert D. Nelon, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, and Charles F. Feldman, Richard J. Tofel, Gibson, Dunn & Crutcher New York City, for appellant.

Joe Mark Elkouri, Gen. Counsel, Marjorie Welch, Asst. Gen. Counsel, Oklahoma Tax Com'n and Robert H. Henry, Atty. Gen., Neal Leader, Asst. Atty. Gen., Oklahoma 'City, for appellee, Oklahoma Tax Com'n.

OPALA, Vice Chief Justice.

The dispositive issue on review is whether a use tax levy on some but not all publications—based on sales price or mode of delivery—is an impermissible burden on rights protected by the First Amendment to the U.S. Constitution. We answer in the affirmative.

I

THE ANATOMY OF LITIGATION

A.

Dow Jones & Company, Inc. [Taxpayer] publishes and daily circulates *The Wall Street Journal*. The Taxpayer also publishes *Barron's National Business and Finance Weekly*, the *National Business Em-*

*ployment Weekly* and *The Asian Wall Street Journal Weekly.* Most issues of these publications are sold by subscription and delivered by mail.

Oklahoma exacts a tax for all nonexempt sales of tangible personal property. 68 O.S.Supp.1987 § 1354(A).[1] This levy would include sales of newspapers and other periodicals were it not for the exemption in 68 O.S.1981 § 1357(C),[2] which extends to

"*[c]arrier sales* of newspapers and periodicals made directly to consumers. Other sales of newspapers and periodicals where any individual transaction does *not exceed seventy-five cents ($0.75)* ...." [Emphasis added.]

To complement the sales tax, Oklahoma imposes a use tax on goods purchased in another state and consumed (or used) within Oklahoma. 68 O.S.Supp.1987 § 1402.[3] By the terms of 68 O.S.1981 § 1404(e) the exemption provided in § 1357(C) also extends to the use tax.[4]

The Business Tax Division of the Oklahoma Tax Commission [Commission] assessed a use tax deficiency against the Taxpayer on distributions of its publications within the state during 1980 through 1985. The Taxpayer challenged the assessment, arguing (1) a subscription to *The Wall Street Journal* is a "series of transactions", each less than seventy-five cents, and should hence be exempt from taxation by § 1357(C),[5] and (2) taxation of its publications based on sales price or distribution method offends both the U.S. and the Oklahoma Constitution.[6]

An administrative law judge, who reviewed the protest, concluded: (a) the purchase of a magazine or newspaper subscription is a *single* transaction and (b) since the § 1357(C) exemption does not apply, the assessment was proper because during the assessment period the price of a subscription to *The Wall Street Journal* exceeded seventy-five cents. The judge did not address the Taxpayer's second argument, reasoning that inasmuch as the Com-

1. During the assessment period in question here—January 1, 1980 through December 31, 1985—§ 1354(A) levied a two-percent tax on sales of tangible personal property. For the statutory version in effect during this period, see 68 O.S.1971 § 1304(a) (renumbered § 1354(A) by Okl.Sess.L.1981, Ch. 313, § 2); Okl.Sess.L.1984, Ch. 2, § 2; Okl.Sess.L.1985, Ch. 179, § 86. The current tax rate is four percent. Okl.Sess.L.1987, Ch. 113, § 16, eff. June 1, 1987. Section 1354(A) was last amended by Okl.Sess. L.1988, Ch. 192, § 1, eff. July 1, 1988.

2. The provisions of 68 O.S.1981 § 1357(C) [formerly 68 O.S.Supp.1975 § 1305(h)] defined a carrier as "a person who regularly delivers newspapers or periodicals to subscribers on an assigned route." This definition remains unaltered by subsequent amendments of § 1357(C); see Okl.Sess.L.1988, Ch. 190, § 1, eff. June 1, 1988, for the current version of the statute.

3. The provisions of 68 O.S.1981 § 1402 imposed a two-percent tax on tangible personal property stored, used or consumed within the state. The current tax rate is four percent. Okl.Sess.L. 1987, Ch. 113, § 22, eff. June 1, 1987.

4. The terms of 68 O.S.1981 § 1404(e) provide: "The provisions of this article shall not apply:

\* \* \* \* \* \*

(e) in respect to the *use of tangible personal property* now specifically *exempted* from taxa-

tion *under Oklahoma Sales Tax Code,* Title 68, Article 13;" [Emphasis added.]

If § 1404(e) had not provided this exemption, the press would have still enjoyed an exemption from the use tax, because sales and use taxes are complementary. *Gray v. Oklahoma Tax Commission,* Okl., 379 P.2d 843, 844 [1963]; *Southeastern, Inc. v. Oklahoma Tax Commission,* Okl., 351 P.2d 739, 740–741 [1960]. Hence transactions exempted from the sales tax are not subject to the use tax. Once a transaction has been exempted from the sales tax, there is no complementary function for a use tax. See *Minneapolis Star & Tribune v. Minnesota Com'r of Rev.,* 460 U.S. 575, 581–582, 103 S.Ct. 1365, 1370, 75 L.Ed.2d 295, 302–303 [1983].

5. The Taxpayer suggests a one-year newspaper subscription should be characterized as a "series of transactions," not as a single transaction. It argues that § 1357(C) should exempt subscription sales of the *The Wall Street Journal* because, during the assessment period, the sales price of a *single issue* for that publication was less than seventy-five cents.

The Taxpayer does not raise the same argument for sales of its weekly publications since the price of each issue during the assessment period exceeded seventy-five cents.

6. The Taxpayer cites to the Equal Protection Clause of the Fourteenth Amendment and to the First Amendment, U.S. Constitution, as well as

mission is an administrative agency rather than a court, it is without power to decide the constitutional validity of a taxing statute.[7] The Commission based its denial of the Taxpayer's protest on the disposition recommended by the administrative law judge.

## B.

■■■ We agree with the Commission that, as an administrative agency, it is powerless to strike down a statute for constitutional repugnancy. Within the framework of Oklahoma's tripartite distribution of government powers, the authority to invalidate an unconstitutional enactment resides *solely* in the judicial department. Art. 7, § 1, Okl. Const. confers on administrative agencies only that quantum of "judicial power" which is necessary to support their exercise of adjudicative authority in individual proceedings brought before them. The power assigned to boards and commissions is not coextensive with that which is vested in the courts.[8] Every statute is hence constitutionally valid until a court of competent jurisdiction declares otherwise. See

to Art. 2, §§ 7 and 22, Art. 5, § 59 and Art. 10, § 5, Oklahoma Constitution.

7. Citing to 68 O.S.1981 § 203 and 1 Am.Jur.2d, Admin.Law, § 185, the administrative law judge stated the Commission is *only* authorized to administer and enforce the tax laws, which are deemed to be constitutional absent a contrary judicial decision.

8. For statutes that place constitutional contests dehors the adjudicative competence of administrative agencies governed by the Administrative Procedures Act, see, e.g., 75 O.S.1981 §§ 306 and 318(1) and our gloss in *Conoco, Inc. v. State Dept. of Health, Etc.*, Okl., 651 P.2d 125, 128–129 [1982].

9. See Davis, 3 Administrative Law Treatise 74, § 20.04 [1976], where it is stated:
   "... [W]e do not commit to administrative agencies the power to determine constitutionality of legislation. Only the courts have authority to take action which runs counter to the expressed will of the legislative body." [Emphasis supplied.]
   In support of this rule Davis cites to *Engineers Public S. Co. v. Securities and Exchange Com'n*, 138 F.2d 936, 952–953 [D.C.Cir.1943], dismissed as moot, 332 U.S. 788, 68 S.Ct. 96, 92 L.Ed. 370 [1947]; *Panitz v. District of Columbia*, 72 App. D.C. 131, 112 F.2d 39, 41–42 [D.C.Cir.1940]; *Todd v. Securities and Exchange Commission*,

*State ex rel. York v. Turpen*, Okl., 681 P.2d 763, 767 [1984].[9]

## II

## UNEQUAL TAX TREATMENT OF THE PRINT MEDIA VIOLATES THE FIRST AMENDMENT'S FREEDOM-OF-SPEECH GUARANTEE

The Taxpayer asserts the § 1357(C) exemption is discriminatory and hence unconstitutional when measured by the current standards of federal jurisprudence. The Taxpayer relies on two recent decisions by the U.S. Supreme Court—*Minneapolis Star and Tribune Company v. Minnesota Commissioner of Revenue*[10] and *Arkansas Writers' Project, Inc. v. Ragland*.[11]

In *Minneapolis Star* the Court invalidated a discriminatory use tax levied on the cost of paper and ink products consumed by publishers in excess of $100,000.00. Although there was no indication of improper legislative motive,[12] the Court held the discrimination condemned there took two distinct forms—the use tax improperly *treated the press differently from other enter-*

137 F.2d 475, 478 [6th Cir.1943]; *Central Nebraska Pub. P. & I. Dist. v. Federal Pow. Com'n*, 160 F.2d 782, 784 [8th Cir.1947], cert. den. 332 U.S. 765, 68 S.Ct. 72, 92 L.Ed. 351 [1947]. *This legal doctrine lies in the mainstream of national law.* See *Great American Insurance Company v. Gold*, 254 N.C. 168, 118 S.E.2d 792, 796 [1961]; *Belco Petroleum Corp. v. State Bd. of Equal.*, 587 P.2d 204, 214 [Wyo.1978]; *Aetna Life Ins. Co. v. Park*, 5 Haw.App. 115, 678 P.2d 1101, 1103 [1984]; *S.S. Kresge Co. v. Bowers*, 170 Ohio St. 405, 166 N.E.2d 139, 141 [1960]; *State ex rel. Park Invest. Co. v. Board of Tax Appeals*, 32 Ohio St.2d 28, 289 N.E.2d 579, 581 [1972]; *Valent v. New Jersey State Board of Education*, 114 N.J.Super. 63, 274 A.2d 832, 836 [1971]; *Clark v. Board of Education of Little Rock Sch. Dist.*, 374 F.2d 569, 570–571 [8th Cir.1967].

10. *Supra* note 4.

11. 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 [1987].

12. As stated in *Minneapolis Star & Tribune v. Minn. Com'r of Rev.*, supra note 4, 460 U.S. at 592, 103 S.Ct. at 1376, 75 L.Ed.2d at 309:
   "Illicit legislative intent is not the *sine qua non* of a violation of the First Amendment.... even regulations aimed at proper governmental concerns can restrict unduly

*prises and its levy targeted a small group of publications within the press.*[13]

■ Economic regulation of the press is, of course, permissible if the tax generally applies to all businesses,[14] but an exaction that either *singles out the press* or *targets some but not all publishers or publications* raises First Amendment concerns.[15] A heavy burden rests on the state to show a compelling governmental interest that cannot be achieved without differential taxation.[16] The state's stake in raising revenue, standing alone, will not justify special tax treatment of the press.[17]

In *Ragland* the state sales tax scheme exempted all newspapers and certain other publications based on their content. The Court held *the tax violated the First Amendment's freedom-of-speech guarantee because it treated some publications less favorably than others.* In short, the tax suffered from the second form of discrimination condemned in *Minneapolis Star.*[18]

Although not based on content, § 1357(C) targets only certain publications and hence violates the *spirit,* if not the letter, of both the First Amendment and the teachings of *Ragland.* The section is a narrowly "targeted" levy exemption in the sense that its

provisions aim at taxing a specific class of publications which are singled out from the rest of the press. Here, publications which are sold for more than seventy-five cents or distributed by mail receive less favorable treatment than those marketed for less than seventy-five cents or delivered directly by carrier.

The Commission argues that because the *Ragland* and *Minneapolis Star* scenarios differ from the present case, the rules announced in those opinions should not govern this assessment protest. We cannot accede to this view. Oklahoma's sales tax scheme is sufficiently similar to that condemned in *Minneapolis Star,* and particularly so in *Ragland,* to enjoin application of their teachings to the present case. Moreover, extant jurisprudence gives no indication that the two pronouncements invoked by the Taxpayer were intended to be rigidly confined within their specific scenarios. Rather, we find that the Court-announced constitutional standards are meant for broad and general application to the press.

In sum, although there is here no hint of a legislative attempt at censoring the press, the appropriate standard for our constitutional review is strict scrutiny, not the rational basis test.[19] A heavy burden lies

---

the exercise of rights protected by the First Amendment."

**13.** *Minneapolis Star & Tribune v. Minn. Com'r of Rev., supra* note 4, 460 U.S. at 591, 103 S.Ct. at 1375, 75 L.Ed.2d at 308.

**14.** *Minneapolis Star & Tribune v. Minn. Com'r of Rev., supra* note 4, 460 U.S. at 583, 103 S.Ct. at 1370, 75 L.Ed.2d at 303. See also *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 194, 66 S.Ct. 494, 498, 90 L.Ed. 614 [1946].

**15.** After discussing the history of the First Amendment and the protection it gives the press, the Court stated in *Minneapolis Star & Tribune v. Minn. Com'r of Rev., supra* note 4, 460 U.S. at 585, 103 S.Ct. at 1371–1372, 75 L.Ed.2d at 304:

"A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected.

\* \* \* \* \* \*

When the State singles out the press, though, the political constraints that prevent a legislature from passing crippling taxes of general

applicability are weakened, and the threat of burdensome taxes becomes acute."

**16.** *Minneapolis Star & Tribune v. Minn. Com'r of Rev., supra* note 4, 460 U.S. at 585, 103 S.Ct. 1372, 75 L.Ed.2d at 305.

**17.** *Minneapolis Star & Tribune v. Minn. Com'r of Rev., supra* note 4, 460 U.S. at 586, 103 S.Ct. at 1372, 75 L.Ed.2d at 305.

**18.** *Arkansas Writers' Project, Inc. v. Ragland, supra* note 11, 481 U.S. at 229, 107 S.Ct. at 1727, 95 L.Ed.2d at 219. The Court in *Ragland* did not address the taxpayer's Equal Protection argument. Instead, it noted, "[the] ... First Amendment claims are obviously intertwined with interests arising under the Equal Protection Clause.... However, since Arkansas' sales-tax system directly implicates freedom of the press, we analyze it primarily in First Amendment terms." *Arkansas Writers' Project, Inc. v. Ragland, supra* note 11, 481 U.S. at 227, n. 3, 107 S.Ct. at 1726, 95 L.Ed.2d at 218.

**19.** The rational basis test is generally applied where a statute burdens neither a fundamental interest (like free speech) nor a suspect class.

with the state to advance some compelling interest. Raising revenue alone is insufficient justification for selective exaction. Whenever the onus cannot be met, the differential tax treatment of the press must be held to offend the First Amendment's freedom-of-speech guarantee. In simpler terms, if the State fails to sustain its burden on this point, we must rule favorably for the Taxpayer.

### III

### SECTION 1357(C) IS INVALID AS AN IMPERMISSIBLE BURDEN ON THE RIGHT TO DISSEMINATE INFORMATION

■ Aside from the state's need for revenue raising, the Commission has advanced no overriding considerations for the § 1357(C) differential treatment of the press. It simply suggests the limited exemption is warranted because neither the "door-to-door carrier" nor the "vending machine" sales method is conducive to *collection* of sales tax.[20]

Contrary to the Commission's view, a state's stake in orderly administration and efficient tax collection is not an interest separate and distinct from that in raising revenue. A convenient, problem-free collection system is merely the means to achieve the primary objective of raising funds.

We see no counterbalancing state interest sufficient to serve as a vehicle for affording fundamental-law legitimacy to Oklahoma's differential taxation of some publications in distribution. The plain First Amendment teachings of both *Ragland* and *Minneapolis Star* command that we invalidate Oklahoma's sales tax and use tax scheme insofar as its provisions affect newspaper and periodical sales.[21] That part of today's decision by which we invalidate the tax scheme will apply to this case, to cases like this one which are *now* pending before the Commission, the district courts, or in the appellate litigation process, and to taxpayers' assessment protests *timely brought after* the date mandate is issued in this appeal.[22]

Today's opinion strikes both the invalid exemptions as well as the underlying sales and use taxes insofar as they concern the print media. While the extent of our statutory surgery may seem overly extensive, it is necessary for we have no other constitutional options. If we were merely to void the exemptions while allowing the taxes to stand, we would be extending the scope of the exactions by judicial fiat.[23] Alternatively, if we were to limit our pronouncement only to this case, the statutory schemes would remain *exactly* as we found them—*tainted by a differential flaw.*

Although in some instances it may be appropriate to sever the invalid from the valid,[24] that cannot be done here. The exemptions provided by §§ 1357(C) and 1404(e) were included in the current Sales

Under this standard, a statute will be upheld unless the varying treatment of the different groups is so unrelated to the achievement of any combination of legitimate state purposes that one can only conclude the classifications are irrational. *Pennell v. City of San Jose*, 485 U.S. 1, 14, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 [1988]; *Vance v. Bradley*, 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171 [1979]; see also *McDonald v. Time–DC, Inc.*, Okl., 773 P.2d 1252, 1257, n. 23 [1989]; *Black v. Ball Janitorial Service, Inc.*, Okl., 730 P.2d 510, 513, n. 8 [1986].

**20.** In its effort to distinguish *Minneapolis Star*, the Commission asserts,
"... the basis of the exemption statute, § 1357(C), is not solely for the purpose of raising revenue as was the case in Minnesota. Oklahoma's exemption is based on the administrative convenience and the practical aspects of sales tax collection from vending machines and independent contractors [i.e., carriers]." See Answer Brief of the Oklahoma Tax Commission, p. 18.

**21.** Because today's pronouncement is based solely on First Amendment principles, we need not, and do not, address the Taxpayer's remaining arguments.

**22.** *Schepp v. Hess*, Okl., 770 P.2d 34, 38–39 [1989]; *Amoco Production v. Corp. Com'n of Okl.*, Okl.App., 751 P.2d 203, 208 [1988].

**23.** *Davis v. Michigan*, 489 U.S. ——, 109 S.Ct. 1500, 1509, 103 L.Ed.2d 891 [1989].

**24.** See *Frost v. Corporation Commission*, 278 U.S. 515, 525–527, 49 S.Ct. 235, 239, 73 L.Ed. 483 [1929]; *Davis v. Wallace*, 257 U.S. 478, 484, 42 S.Ct. 164, 166, 66 L.Ed. 325 [1922].

and Use Tax Codes *as originally passed.*[25] The taxes and related exemptions are hence interwoven and *must stand or fall together.*[26] Today's pronouncement finds constitutional infirmity in the sales and use tax schemes brought to our attention. There is no First Amendment impediment that would prevent the legislature from reenacting both taxes, without exemption, so as to burden all sales of printed publications within Oklahoma.

THE COMMISSION ORDER IS REVERSED.

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur.

---

25. See Okl.Sess.L.1981, Ch. 313.

26. See generally *Frost v. Corporation Commission, supra* note 24; *Davis v. Wallace, supra* note 23; see also *Gramling v. Maxwell,* 52 F.2d 256, 259 [W.D.N.C.1931], where the court quoted with approval from *State v. Mitchell,* 97 Me. 66, 53 A. 887, 890–891 [1902]:

"'It is true that in some cases one section or provision of a statute may be held unconstitutional without invalidating the whole statute, but that cannot be done when it would violate the legislative intent. In this case it evidently was the clear intent of the legislature that the persons described in the clause cited should not pay license fees in any event. That clause is more than a matter of detail. It is an integral part of the statute, and affecting all that part requiring the payment of license fees. To hold that, because of the invalidity of that section, the persons the legislature therein enacted should not pay license fees must nevertheless pay such fees, is to violate a clearly expressed legislative intent; is to impose burdens the legislature explicitly declared should not be imposed.'"