GLOBE LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 83426.

Supreme Court of Oklahoma.

March 19, 1996.

**1324**

Steven K. McKinney, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for Appellant.

Gregory K. Frizzell, Successor General Counsel, David Hudson, General Counsel, Marjorie L. Welch, Christy J. Caesar, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

OPALA, Justice.

Certiorari was granted to resolve the first-impression issue whether the use by Globe Life and Accident Insurance Company [Globe or taxpayer]—of information encoded on magnetic tapes (names and addresses of potential customers) is taxable under the terms of 68 O.S.1991 §§ 1401 et seq. (Use Tax Code).[1] We answer in the negative.

## I.

## THE ANATOMY OF LITIGATION

Between January 1, 1989 and June 30, 1992 Globe marketed its products through mass mailings. It ordered the names and addresses of potential customers from *list brokers*[2] who—cognizant of Globe-specified geographic areas and demographic traits—contacted *list managers*[3] to compile the requested information. Tailored mailing lists placed on magnetic tapes or cartridges[4] were provided to Globe at varying prices per thousand names—the price made dependent on the search parameters set by Globe.

Upon receiving the tapes from the list brokers, Globe loaded the data onto its computer system. The tapes were then erased and either returned to the broker or stored in Globe's library for future use. If the magnetic tape was not returned, Globe was billed separately for the tape. The price paid the list broker entitled Globe to use the magnetically encoded data *only once*, but not to sell or rent it. If a second use—called in the trade "a remail"—was made of the information, an additional fee was due.

During the summer of 1992 the Oklahoma Tax Commission [OTC or Commission] conducted a field audit of Globe's books which focused on Globe's mailing-list purchases. Later, a use tax was assessed against Globe calculated on the purchase price of the mailing lists—which were deemed *tangible personal property* by the Commission. The tax was paid under protest and a refund sought. The OTC adopted as its order the findings, conclusions and recommendations of the administrative law judge. The Court

---

1. The pertinent terms of 68 O.S.1991 § 1402 are:

 "There is hereby levied and there shall be paid by every person storing, using, or otherwise consuming within this state, *tangible personal property* purchased or brought into this state, an excise tax on the storage, use, or other consumption in this state of such property...." [Emphasis added.]

2. List brokers are persons who acquire and market lists of prospective purchasers of products and services in buyer-defined need areas.

3. List managers own data bases from which custom-made mailing lists are crafted.

4. The lists were transferred to Globe in a format compatible with its computers' capabilities.

of Appeals reversed the use-tax assessment, holding (1) that the mailing lists are non-assessable *intangible* personal property and (2) that the medium used to transport the data—encoded magnetic tapes—though tangible property is merely incidental to the real object of the mailing lists' purchase, *i.e.*, the acquisition of information. Certiorari was granted to settle a first-impression question.

## II

## THE HISTORICAL RELATIONSHIP BETWEEN THE USE TAX[5] AND SALES TAX[6] STATUTES

 To resolve the primary issue whether Globe's purchase of magnetic tapes encoded with mailing lists represents a taxable event within the meaning of 68 O.S.1991 § 1402[7] or whether, as the taxpayer asserts, it is a nontaxable use of intellectual property, the relationship between the Sales Tax Code and the Use Tax Code must be examined. It is against this backdrop, as supplemented by the common law,[8] that the tape's characterization as tangible, intangible or mixed personal property[9] is to be made and the tendered question answered.

[3–5] The historical antecedents of Oklahoma's current Sales Tax Code lie in the 1937 Sales Tax Act.[10] There the Legislature levied a tax on "sales"—which were defined to include "the exchange, barter, lease or rental of *tangible personal property* where such exchange, barter, lease or rental results in either the transfer of the title or the possession." [11] In the same year (1937) a use tax [12] also was imposed with the intent that *tangible personal property* purchased outside Oklahoma should be subject to taxation if (1) this property was *used or consumed* here and (2) it would have been subject to a sales tax if it had been purchased in this state.[13] While the Sales Tax and Use Tax Codes are complementary and supplementary to one another,[14] they are neither identical nor coterminous. The Sales Tax Code [15] provides for a sales tax on *tangible and intangible* personal property and certain *services* identified in the statute. The Use Tax Code imposes a tax *solely* on *tangible personal property* purchased outside Oklahoma and brought into the state. Neither *intangible personal property* nor *services* fall within the current scope of the Use Tax Code.

5. 68 O.S.1991 §§ 1401 et seq.

6. 68 O.S.1991 §§ 1350 et seq.

7. For the pertinent terms of § 1402, see *supra* note 1.

8. By the mandate of 12 O.S.1991 § 2 *the common law remains in full force unless a statute explicitly provides to the contrary.* The common law's legislative abrogation may not be effected by mere *implication. Tate v. Browning–Ferris, Inc.*, Okl., 833 P.2d 1218, 1225–26 (1992); *Silver v. Slusher*, Okl., 770 P.2d 878, 884 (1989); *Ricks Exploration v. Okl. Water Resources Bd.*, Okl., 695 P.2d 498, 504 (1985); *Roxana Petroleum Co. v. Cope*, 132 Okl. 152, 269 P. 1084, 1085 (1928) (the court's syl. ¶ 3); *Reaves v. Reaves*, 15 Okl. 240, 82 P. 490, 495 (1905); *State Mut. Life Assur. Co. of Amer. v. Hampton*, Okl., 696 P.2d 1027, 1034, 1036 (1985) (Opala, J., concurring). It must be clearly and plainly expressed. *Fuller v. Odom*, Okl., 741 P.2d 449, 451 (1987); *McCormack v. Oklahoma Pub. Co.*, Okl., 613 P.2d 737, 740 (1980). A presumption favors the preservation of common-law rights. *Reaves, supra*, 82 P. at 495; *Hampton, supra* at 1036 (Opala, J., concurring). In this State's legal system the common law forms "a dynamic and growing" body of rules that changes with the conditions of society. *Brigance v. Velvet Dove Restaurant, Inc.*, Okl., 725

P.2d 300, 303 (1986), quoting *McCormack, supra* at 740. *See also Vanderpool v. State*, Okl., 672 P.2d 1153, 1157 (1983).

9. Ownership in personal property that is combined of discrete items is governed by 60 O.S. 1991 §§ 342 and 343; there are no provisions either under Property or under Taxation which deal with a combination of tangible and intangible personal property.

10. *See* 1937 Okla.Sess.Laws ch. 66, pp. 445–56.

11. *See* 68 O.S.1991 § 1352(L)(1) for the similar language.

12. *See* 1937 Okla.Sess.Laws ch. 66, pp. 456–61.

13. *See Southeastern, Inc. v. Oklahoma Tax Commission*, Okl., 351 P.2d 739, 740 (1960); *Harding Masonry Const. Co. v. Oklahoma Tax Commission*, Okl., 275 P.2d 264, 267 (1954).

14. *Phillips v. Oklahoma Tax Com'n*, Okl., 577 P.2d 1278, 1282–83 (1978); *Southeastern, supra* note 13 at 740–41.

15. 68 O.S.1991 §§ 1350 et seq.

## III

## CLASSIFICATIONS OF PERSONAL PROPERTY

### A

### STATUTORY

■ The genesis of all taxation lies in the legislature. The subject has no existence apart from statute.[16] To assay the propriety of the use-tax levy against Globe, it must be determined whether the procurement of mailing lists encoded on magnetic tapes constitutes *the purchase of tangible personal property.*

While the Use Tax Code does *not* define *tangible personal property*, the Sales Tax Code does. The latter was amended in 1981 to include the following definition:

> " 'Tangible personal property' shall mean personal property which may be seen, weighed, measured, felt or touched or which is in any other manner perceptible to the senses." [17]

Tangible personal property has been subject to both sales and use taxes since the statutory inception of this revenue source. When the Legislature first defined "tangible personal property" in the 1981 Sales Tax Code, it also expanded the scope of transactions *subject to the sales-tax levy* by including the sale of:

> "Computer hardware, software, coding sheets, cards, magnetic tapes or other me-

dia on which prewritten programs have been coded, punched, or otherwise recorded, including the gross receipts from the licensing or software programs;" [18]

There is no comparable *statutory* expansion in the *Use Tax Code.*

### B

### TYPES OF PERSONAL PROPERTY AT COMMON LAW

■ At common law "tangible personal property" refers to rights in tangible physical things of the world over which *possession* may be taken. "Intangible personal property" encompasses property rights which—though represented by tangible objects (*e.g.,* stock certificates, bonds and notes)—are essentially incorporeal in that they have limited intrinsic value and *ultimately* can only be claimed or enforced by a legal action.[19] At common law *things* which are incorporated in the manufacturing process are *subsumed* into the end product and are classified as *either* tangible or intangible personal property according to the product's *final* use or disposition.[20] There is *no* common-law notion of *mixed personal property—i.e.,* personalty that is part intangible, part tangible.[21]

### C

### RULES FOR CONSTRUING TAX STATUTES

■ Tax statutes are *penal* in na-

**16.** *See Joseph v. McNeive,* 215 Kan. 270, 524 P.2d 765, 766 (1974).

**17.** 68 O.S.1991 § 1352(N). Though the subject of sales tax levies since 1937, tangible personal property—as used in the Sales Tax Code—was first given a statutory definition by 1981 Okla. Sess.Law ch. 313, p. 1072.

**18.** 68 O.S.1991 § 1354(H). This category of sales was *first* included within the purview of the Sales Tax Code in 1981. *See* 1981 Okla.Sess. Laws ch. 313, p. 1074.

**19.** R. BROWN, THE LAW OF PERSONAL PROPERTY pp. 11–12 (W. Raushenbush 3d ed. 1975). *See also Perkins v. Oklahoma Tax Commission,* Okl., 428 P.2d 328, 330 (1967). At common law intangible personal property falls under the rubric of a *chose in action.* For an early discussion of the

historical parameters of this term, see H.W. Elphinstone, *What is a Chose in Action?,* 36 LAW Q.REV. 311 (1893); T.C. Williams, *Is a right of action in tort a chose in action?,* 38 LAW Q.REV. 143 (1894); S. Brodhurst, *Is copyright a chose in action?,* 41 LAW Q. REV. 64 (1895); C. Sweet, *Choses in Action,* 41 LAW Q.REV. 238 (1895).

**20.** None of the constituent elements—either tangible or intangible—which make up an article of personal property retains its original character in the final product. Pavluk, *Computer Software and Tax Policy,* 84 COLUM.L.REV. 1992, 2011 (1984). When classifying intellectual property which is copyrightable, the character of the tangible materials (*e.g.,* pencils, paper, computers) used to create the idea are incorporated into the intangible product. *Id.* at 2013.

**21.** *See* 84 COLUM.L.REV., *supra* note 20 at 2011.

ture.[22] *Where there is reasonable doubt about the taxing act's meaning, all ambiguity must be resolved in favor of the taxpayer.*[23] Legislative intention—ascertained from a general consideration of the entire act—must be given effect.[24] Nonetheless, courts cannot enlarge the taxing act's ambit to make its provisions applicable to cases not clearly within the Legislature's contemplation or to fill lacunae in the revenue law in a manner that would distort the enactment's plain language.[25]

## IV

### THE NATURE OF MAGNETIC TAPES FABRICATED ACCORDING TO TAXPAYER SPECIFICATIONS AND THEIR TAXABILITY UNDER THE TERMS OF THE USE TAX CODE

#### A

#### THE PARTIES' POSITIONS

■ The Commission argues that, when data or information encoded on magnetic tapes is purchased by a taxpayer, the tapes' *tangible* nature determines (1) the legal character of the property purchased and (2) the taxability of the transaction. While *"tangible personal property"* is *not* defined in the Use Tax Code, the OTC urges adoption of that term's definition found in the Sales Tax Code.[26] According to the OTC, the taxpayer's purpose or object in purchasing the data is irrelevant to whether the transaction is subject to the use-tax levy. Further, the Commission urges that whether Globe could have purchased the information in an intangible form—*i.e.*, had the data transmitted to its computers electronically *vis-à-vis* another computer—is immaterial to assaying this transaction's taxability. OTC contends that whether a taxable event has occurred depends solely on how the taxpayer *actually* structured the purchase in issue and *not* by how the acquisition *might* have been effected. In sum, the Commission takes the position that Globe purchased magnetic tapes, *i.e.*, tangible personal property, outside Oklahoma and brought them into the state for use, making the transaction subject to the use tax.

Globe counters that when it purchased the magnetic tapes (encoded with mailing lists prepared to its specifications), it bought *intangible personal property, i.e.*, intellectual property, which is outside the Use Tax Code's scope. The taxpayer counsels us that its *object in buying the data* is determinative of the purchased property's legal character. According to Globe, the Sales Tax Code's definition of *"tangible personal property"* is to no avail for the OTC's purposes because, as the Legislature itself recognized in 1981,[27] that definition does not include computer programs encoded on magnetic tapes, *i.e.*, intangible intellectual property.

Neither party disputes that the information on the tapes, standing alone, is *intangible personal property*.[28] Rather, the parties

22. *Midvale Mining and Mfg. Co. v. Dutron Corp.*, Okl., 569 P.2d 442, 443 (1977). *See also Appeal of J.G. Masonry, Inc.*, 235 Kan. 497, 680 P.2d 291, 292 syl. 1 (1984); *Shafer v. Glander*, 153 Ohio St. 483, 92 N.E.2d 601, 603 (1950).

23. *Strelecki v. Okl. Tax Com'n*, Okl., 872 P.2d 910, 920 (1993); *Neumann v. Tax Com'n*, Okl., 596 P.2d 530, 532 (1979); *Wilson v. State ex rel. Okl. Tax Com'n*, Okl., 594 P.2d 1210, 1212 (1979); *Personal Loan & Finance Co. of Capitol Hill v. Okl. Tax Commission*, Okl., 437 P.2d 1015, 1017 (1968).

24. *Wilson, supra* note 23 at 1212; *Affiliated Management Corp. v. Okl. Tax Comm'n*, Okl., 570 P.2d 335, 336 (1977).

25. *Wilson, supra* note 23 at 1212; *Magnolia Pipe Line Co. v. Oklahoma Tax Commission*, 196 Okl.

633, 167 P.2d 884, 887 (1946); *State v. Tulsa Flower Exchange*, 192 Okl. 293, 135 P.2d 46, 49 (1943). *See also in this connection Willmus v. Commissioner of Revenue*, 371 N.W.2d 210, 213 (Minn.1985).

26. *See supra* note 16 for the statutory definition of "tangible personal property" in the Sales Tax Code.

27. *See supra* note 18 for the act expanding the scope of the Sales Tax Code to include the sale of magnetic tapes for sales-tax purposes.

28. On review of the administrative law judge's ruling in this case, the Commission concluded that when—after being loaded on Globe's computers—the mailing lists were used again, the second fee paid the list broker was not subject to use tax because the used information was not

argue that the issue before us is whether the data may be deemed (for tax purposes) *severed* from the magnetic tape, *i.e.*, its container—a tangible object.[29]

## B

## THE MAGNETIC TAPES WHICH GLOBE PURCHASED ARE NOT TANGIBLE PERSONAL PROPERTY EITHER UNDER THE USE TAX CODE OR THE COMMON LAW

Determining the legal nature of magnetic tapes, encoded with information *specific* to its purchaser, has perplexed both state and federal courts for several decades now.[30] The difficulty is that these items, like computer software, are "neither fish nor fowl or good red herring." They possess the legal qualities of *both* tangible *and* intangible personal property. Products like those purchased by Globe incorporate the designer's intellectual property or information as well as a physical media of transfer.

■ Because the Use Tax Code does not define "tangible personal property", the Commission would import into it the Sales Tax Code's definition of the term and rest upon it the levy against Globe. *Tangible personal property* has been the object of both sales and use taxes since this revenue's inception. If, as the Commission suggests, the Sales Tax Code's definition of "tangible personal property" includes magnetic tapes, the Legislature's 1981 amendment of the sales-tax statutes [68 O.S.1991 § 1354(H) ]—making the Sales Tax Code apply to the sale of "magnetic tapes ... on which prewritten programs have been coded"[31]—would have been superfluous.[32] This court will not assume that the Legislature has done a vain or useless act;[33] it must interpret legislation so as to give effect to every word and sentence rather than rendering some provisions nugatory.[34] The legislative intent evinced in § 1354(H) gives no support for the construct tendered by the Commission—that "tangible personal property" *as defined by the Sales Tax Code* includes magnetic tapes encoded with data.

■ Because the term "tangible personal property" is used in but *not* defined by the Use Tax Code, the term may be construed by looking to the common law. The common law looks to *the personal property's end use or disposition* to determine whether it is tangible or intangible. The magnetic tapes' final disposition is *not* their *possession—a common-law bellwether of a thing's tangible nature.* The tapes were *not* acquired as a *finished program.* Globe has to load their content onto its computer to secure the *information, i.e.,* mailing lists, which it purchased.

embodied in any form of tangible personal property.

**29.** The record does not reflect any longstanding agency policy *vis-à-vis* the claimed exemption in suit. While the taxpayer asserts that certain Commission rules support the notion that contents may be separated from the medium in which they are found, no long-continued agency construction of the term "tangible personal property", as used in the Use Tax Code, has been offered. Our decision must necessarily rest on grounds different from a long-established agency construction. The doctrine of *Oral Roberts University v. Oklahoma Tax Commission*, Okl., 714 P.2d 1013, 1015 (1985), is *sans* record support for its application to this case.

**30.** *See* Kuo, *Sales/Use Taxation of Software: An Issue of Tangibility*, 2 High Tech.L.J. 125, 126 (1987), where it is observed:
"The touchstone requirement for sales/use taxation of tangible property yields inconsistent treatment of similar software programs.... 'Canned programs' (prewritten programs requiring no modification for consumer use) are

taxed while 'custom programs' (programs developed for specific customer needs) are not." *See also* Davidson, *Common Law, Uncommon Software*, 47 U.Pitt.L.Rev. 1037, 1046 (1986); Hoffman, *Software and State Sales/Use Taxes—A Current Look at 47 States and the District of Columbia*, 3 Computer L.Rep. 703, 705–19 (1985).

**31.** 68 O.S.1991 § 1354(H).

**32.** If the OTC is correct, *tangible personal property* for sales-tax purposes would have already encompassed the sale of magnetic tapes encoded with information. This would make the 1981 amendment of the Sales Tax Code unnecessary.

**33.** *Farris v. Cannon*, Okl., 649 P.2d 529, 531 (1982).

**34.** *Strelecki, supra* note 23 at 920 n. 69; *Rodgers v. Higgins*, Okl., 871 P.2d 398, 409 (1994); *TWA v. McKinley*, Okl., 749 P.2d 108, 110 (1988); *Anderson v. O'Donoghue*, Okl., 677 P.2d 648, 651 (1983); *In re Supreme Court Adjudication, Etc.*, Okl., 597 P.2d 1208, 1210 (1979).

Here, *information* (intellectual property) constitutes the very essence of the final use.

██ Early common law classified personal property by examining the rights which were being asserted in the *thing*. While *possession* is the key to enforcement of rights in *tangible personal property*, rights in *intangible personal property* are enforceable only by a claim or an action.[35] The magnetic tapes' legal character (as either tangible or intangible personal property) depends on whether the list broker could enforce its rights in the encoded information—prospective clients' names and addresses—by a claim or action or by reclaiming the tape's possession.[36] The deficiency of this type of analysis becomes apparent when the early common-law view is applied to new kinds of property—*e.g., specialized computer programs*—which did not exist when the old rules were formulated. Such is the case here.[37]

The common law does not tolerate the notion that *mixed property* may be *arbitrarily* deemed intangible or tangible *where the character of either could prevail*. The statutory definition of tangible personal property which the Commission suggests—*i.e.,* that found in the Sales Tax Code—comes burdened with a legislative intent that tangible personal property does not include magnetic tapes encoded with information.[38] Use-tax

levies are assessable only against *tangible* personal property. *Because the purchased magnetic tapes—encoded with information specific to Globe's needs—most closely approximate intellectual property, we hold that they represent intangible personal property not subject to a use-tax levy.*

Extant jurisprudence demands that tax laws be construed in favor of the taxpayer.[39] There is obviously a lacuna in the legislative scheme that governs the imposition of use tax on magnetic tapes' contents. In light of this void, the proper remedy for OTC is not to have the courts expand the Use Tax Code's scope to include *intangible* personal property but rather to press for the gap's closure by the Legislature.

## V

### THE HOLDING OF THIS CASE IS TO BE PROSPECTIVELY APPLIED

██ Because it is clear that today's pronouncement settles a significant issue of *first impression*, we hold that it shall apply *prospectively only* to this case, to cases now pending before judicial or administrative tribunals or in the appellate litigation process, as well as to all controversies over like or identical purchases made [40] *after* this opinion is promulgated.[41]

---

**35.** *See G.M. Leasing Corp. v. U.S.,* 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977); *Coones v. F.D.I.C.,* 848 P.2d 783, 808 (Wyo.1993) (Macy, C.J., concurring). *See also* BROWN, THE LAW OF PERSONAL PROPERTY, *supra* note 19 at 11.

**36.** *See* BROWN, THE LAW OF PERSONAL PROPERTY, *supra* note 19 at 11, for the distinctions between *choses in possession* and *choses in action.*

**37.** For a discussion of the application of common-law classifications of personal property to computer software, see 84 COLUM.L.REV. *supra* note 20 at 2012–14.

**38.** Relying upon a case from the Maryland Court of Appeals, *Comptroller of the Treas. v. Equitable Trust,* 296 Md. 459, 464 A.2d 248, 254 (1983), the OTC asserts that the legislative definition of "purchase price" evinces an intent that intellectual property cannot be severed from the media by which it is transported. We do not find this authority persuasive because (1) the court was applying a sales tax statute and (2) unlike the Maryland statute for construction in that case, Oklahoma's definition of *purchase price* does not allow deductions for labor, service or other costs.

**39.** *See* section III(C), *supra.*

**40.** In short, this opinion will *not* govern controversies—*not* now in the litigation pipeline—which involve claimed exemptions on purchases made *before* this opinion is promulgated.

**41.** Judicial policy determines whether, and to what extent, a new rule will operate retroactively. *Griggs v. State ex rel. Oklahoma Dept. of Transp.,* Okl., 702 P.2d 1017, 1020 (1985). In *Great Northern Railway v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932), a noncriminal case involving no question of constitutional law, the Court held that a state may choose for itself between the principle of relation back and forward operation of its precedents. For Oklahoma jurisprudence applying a new rule of law to cases in the *pipeline,* see *Amoco Production v. Corp. Com'n of Okl.,* Okl.App., 751 P.2d 203, 208 (1988); *Schepp v. Hess,* Okl., 770 P.2d 34, 39 (1989); *Dow Jones & Co. v. State ex rel. Tax Com'n,* Okl., 787 P.2d 843, 847 (1990). For a discussion of the *pipeline doctrine,* see *Strelecki, supra* note 23 at 915 n. 44.

## VI

## SUMMARY

Oklahoma's use-tax statutes historically have been limited in application to *tangible personal property.* When this classification of personal property was first employed (in 1937) in the sales and use tax statutes, neither the common law nor extant jurisprudence addressed itself to personal property having a nature analogous to the magnetic tapes encoded with data which are here in suit. Like computer software, this personal property in its end use *retains both intangible and tangible qualities.* According to the common law, in which no notion of *mixed* property avails, the property's final use, *i.e.,* its transfer onto Globe's computers, marks the temporal point when its tangible quality stands subsumed into *intangible personal property, i.e., information.* Because *intangible personal property* lies outside the Use Tax Code's ambit, the tax levy in suit is impermissible. Upon certiorari previously granted,

THE COURT OF APPEALS' OPINION IS VACATED; THE TAX COMMISSION'S ORDER IS REVERSED; AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT

ALMA WILSON, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., and SUMMERS, J., dissent.