Dear Senator Long,
¶ 0 This office has received your letter requesting an official Attorney General Opinion addressing the following issue:
The Oklahoma Statutes, at 63 O.S. 1991 and Supp. 1996, §§2811-2821, allow local governments to impose a 911 fee oncustomers of local exchange telephone companies to fund 911service. Can local governments impose a similar 911 fee oncellular telephone customers?
¶ 1 The Nine-One-One Emergency Number Act, 63 O.S. 1991 andSupp. 1996, §§ 2811-2821 (hereinafter "the Act"), is the sole authority under Oklahoma law for local governments' imposition of a fee to fund nine-one-one emergency number service. It was enacted
 to establish the telephone number nine-one-one (911) as the primary emergency telephone number for use in this state and to encourage units of local governments and combinations of such units to develop and improve emergency communication procedures and facilities in order to expedite the response of law enforcement, fire, medical, rescue, and other emergency services to any person requiring such assistance.
63 O.S. 1991, § 2812[63-2812].
¶ 2 As a mechanism to fund the nine-one-one emergency number service, the Act allows a governing body[1] to impose an "emergency telephone fee," 63 O.S. Supp. 1996, § 2814[63-2814](A), (B), which the Act defines as "a fee to finance the operation of emergency telephone service." 63 O.S. Supp. 1996, § 2813[63-2813](3). Under the Act, every "service user" who is billed by a local exchange company "shall be liable for any fee imposed." 63 O.S.Supp. 1996, § 2814[63-2814](L); see also, 63 O.S. Supp. 1996, §2814[63-2814](M). Thus, for a governing body to impose the emergency telephone fee on a cellular telephone customer, such customer must be a "service user" under the Act.
¶ 3 To determine if cellular telephone customers are service users under the Act, the Act's definition of a service user must be examined. The Act defines a "service user" as "any person who is provided exchange telephone service in this state." 63 O.S.Supp. 1996, § 2813[63-2813](8). Neither the Act nor any other Oklahoma statute defines "exchange telephone service." Therefore, the entire Act must be examined to determine whether the Oklahoma Legislature intended such term to include cellular telephone service. See Globe Life Accident Insurance Company v. OklahomaTax Commission, 913 P.2d 1322, 1327 (Okla. 1996).
¶ 4 Section 2814(K) of the Act states that "[t]he emergency telephone fee shall be imposed only upon the amount received from the tariff for exchange telephone service or its equivalent."63 O.S. Supp. 1996, § 2814[63-2814](K) (emphasis added). This section implies that exchange telephone service includes only telephone service which is regulated and stated in the form of a tariff. The Act's definition of "tariff rate" supports this implication. It defines a "tariff rate" as "the rate or rates billed by a local exchange telephone company stated in tariffs applicable for such company, as approved by the Oklahoma Corporation Commission, which represent the recurring charges of such local exchange telephone company for exchange telephone service or its equivalent." 63 O.S. Supp. 1996, § 2813[63-2813](9).
¶ 5 In addition, throughout the Act, the amount the Act allows a governing body to charge for the emergency telephone fee is defined in terms of a percentage of the applicable tariff rate
for exchange telephone service. For example, Section 2814(B) caps the allowed amount for the emergency telephone fee beginning in the first year of the fee's enactment at "an amount not to exceed five percent (5%) of the tariff rate." 63 O.S. Supp. 1996, §2814[63-2814](B) (emphasis added). During the second year of the fee's enactment, the Act limits the amount of the emergency telephone fee to "fifteen percent (15%) of the tariff rate." Id.
(emphasis added). Further, the Act provides that "future rate changes for emergency telephone service shall be stated as a percentage of the initial tariff rate." 63 O.S. Supp. 1996, §2814[63-2814](J) (emphasis added).
¶ 6 The Act's use of the tariff rate applied to exchange telephone service to define the imposition and calculation of the emergency telephone fee indicates that cellular telephone service is not included in such exchange telephone service. Unlike its treatment of wireline telephone service, see generally 17 O.S.Supp. 1996, § 137[17-137], the Oklahoma Corporation Commission does not regulate the rates of cellular telephone companies. This nonregulatory treatment is based on the Oklahoma Statutes' classification of cellular telephone companies as "radio common carriers," see 17 O.S. 1991, § 201[17-201], and on federal law, see47 U.S.C. § 332(c)(3)(A) (1994). As "radio common carriers," cellular telephone companies' rates are not stated in tariffs that are approved by the Oklahoma Corporation Commission. Instead, as intended by the Oklahoma Legislature, see 17 O.S.Supp. 1996, § 200[17-200], and later required by federal law, see47 U.S.C. § 332(c)(3)(A) (1994), cellular telephone companies' rates are subject to free competition.[2]
¶ 7 The Act's continual references to tariff rates to determine the imposition and calculation of the emergency telephone fee demonstrate that the Legislature did not intend cellular telephone service, for which there is no tariff, to be included as part of exchange telephone service, which is tariffed. Thus, customers provided cellular telephone service are not "service users" under the Act. Therefore, such customers are not liable for any emergency telephone fee imposed by a governing body.[3]
¶ 8 It can be determined from the language of the Act that the Oklahoma Legislature did not intend to allow governing bodies to impose the emergency telephone fee upon cellular telephone customers. The language of the Act clearly demonstrates that the Legislature intended that exchange telephone service not include cellular telephone service.
¶ 9 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Nine-One-One Emergency Number Act, 63 O.S. 1991 and Supp.1996, §§ 2811-2821, does not allow local governments to impose a911 fee on cellular telephone customers.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DARA DERRYBERRY PRENTICE ASSISTANT ATTORNEY GENERAL
[1] The Act defines a "governing body" as "the board of county commissioners of a county, the city council or other governing body of a municipality, or a combination of such boards, councils or other municipal governing bodies, which shall have an administering board as provided in subsection G of Section 2815 of this title." 63 O.S. Supp. 1996, § 2813[63-2813](4).
[2] Since the Oklahoma Legislature passed the Nine-One-One Emergency Number Act in 1986, federal law has prohibited states and local governments from regulating "the rates charged by any commercial mobile service or any private mobile service." See47 U.S.C. § 332(c)(3)(A) (1994). Even before this federal prohibition against states' regulation of cellular telephone companies' rates, the Oklahoma Corporation Commission had adhered to the Oklahoma Legislature's expressed intent that the Commission not regulate the rates of Oklahoma cellular telephone companies.
[3] If the emergency telephone fee could be imposed on a cellular telephone customer under the Act, that aspect of the Act would possibly be preempted under federal law due to the federal prohibition against states and local governments regulating the rates charged by commercial and private mobile services, see47 U.S.C. § 332(C)(3)(A) (1994). See, e.g., Silkwood v. Kerr-McGeeCorporation, 464 U.S. 238, 248 (1984). However, because the Act does not apply to cellular telephone customers, this Opinion does not address the preemption question.