2009 OK 11

**STATE of Oklahoma, ex rel. OKLA-HOMA TAX COMMISSION, Plaintiff/Appellant,**

v.

**SUN COMPANY, INC. (R & M), a corporation, Defendant/Appellee.**

No. 103,776.

Supreme Court of Oklahoma.

Feb. 10, 2009.

Rehearing Denied Jan. 11, 2010.

As Corrected March 15, 2010.

Robert K. Pezold and Joseph C. Woltz of Pezold, Barker & Woltz, Tulsa, OK, for Plaintiff/Appellant.

Larry D. Patton, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Plaintiff/Appellant.

James M. Chaney and Matthew L. Standard of Kirk & Chaney, Oklahoma City, OK, for Defendant/Appellee.

REIF, J.

¶ 1 This case concerns the liability of Sunoco for gross production taxes on oil that was marketed under "barrel-back" arrangements between the producers and Sunoco. The Oklahoma Tax Commission contends that Sunoco is liable for additional taxes (1) on "barrel-back" purchases by Sunoco from 1984 and after, and (2) on an amount that Sunoco paid to settle a class action suit by royalty-owners over "barrel-back" transactions [1]. Under these "barrel-back" arrangements, Sunoco purchased oil at the lease and transported it to a market center. At the market center, Sunoco would sell the oil back to the producer for the price paid by Sunoco plus transportation costs. The producer would then sell the oil to third parties at the price set by the New York Mercantile Exchange. Taxes were paid on the Sunoco purchases at the lease in accordance with *68 O.S.2001 § 1010* (B)(5) [2]. These facts were assumed true by the trial court without objection of the parties for purposes of summary judgment.

¶ 2 The Tax Commission basically believes that "barrel-back" arrangements are nothing more than a scheme for producers to sell oil off the lease at a price higher than the prevailing field price, but having taxes and royalties figured on the field price paid by Sunoco. According to the Tax Commission, the producers could not carry out such a scheme without the complicity of transporters such as Sunoco, who ostensibly buy the oil at the lease, but have no intent to sell the oil to any other party than the producer. In addition to playing this passive role, the Tax Commission alleges that Sunoco actively furthers this scheme by filing gross production tax returns based on its purchases at the lease, knowing that these purchases are simply the conduit through which producers were moving oil off-lease for the first arms-length sale at the market center.

¶ 3 In substance, the Tax Commission argues that Sunoco has acted as an accomplice to tax evasion not only in the movement of oil off-lease, but also by filing misleading returns. The Tax Commission contends that Sunoco bears joint liability with the producers for the additional taxes due from the market center sales by virtue of its role in this scheme.

¶ 4 In response, Sunoco maintains that it has done everything the law requires of it in connection with its purchase of the oil at the lease. Sunoco points out that it paid Sunoco's field price for the oil it purchased at the lease, reported each purchase at the lease and paid taxes on each purchase at the lease, all as required by § 1010(B)(5). In essence, Sunoco believes the sale at the lease ends the producer's status as a producer for purposes of gross production tax liability. Thereafter, the producer is just another market buyer when repurchasing the oil at the market center. In turn, when reselling the oil to other market buyers, the producer is acting as any other market seller.

1. *In re Lease Oil Antitrust Litigation*, 186 F.R.D. 403 (S.D.Tex.1999).

2. Title *68 O.S.2001 § 1010* (B)(5) states in pertinent part:
   B. Except as otherwise provided in subsection G of this section, every person responsible for paying or remitting the tax levied by Section 1001 et seq. of this title on the production from any lease shall file with the Tax Commission a monthly report on each lease, regardless of sales or purchases of production from the lease during the report period, under oath, on forms prescribed by the Tax Commission, giving, with other information required, the following:

   . . . .

   5. The total value of the mineral oil, gas, or casinghead gas, at the time and place of production, including any and all premiums paid for the sale thereof, at the price paid, if purchased at the time of production.

¶ 5 As concerns liability for additional taxes on the amount paid by Sunoco to settle the royalty owners class action suit, Sunoco contends that this amount was not paid for undervalued oil. Sunoco maintains it was paid to buy peace and to settle a disputed claim.

■ ¶ 6 The primary basis asserted by the Tax Commission for holding Sunoco liable for additional taxes is that the oil was not actually sold at the time of production but was retained by the producer through the "barrel-back" arrangement. The Tax Commission relies on *68 O.S.2001 § 1009* (D) [3] that provides, in pertinent part, "[i]n the event oil is not sold at the time of production but is retained by the producer, the tax on such oil not sold shall be paid by the producer...." Again, the Tax Commission propounds that Sunoco shares liability for taxes on such retained oil by reason of its complicity with the producer.

¶ 7 Resolution of this controversy necessarily depends on the correctness of the Tax Commission's interpretation of § 1009(D). More particularly, we must determine whether the producer "retained" the oil in the "barrel-back" arrangement.

■ ¶ 8 Statutory construction presents a question of law. *Blitz USA, Inc. V. Oklahoma Tax Commission*, 2003 OK 50, ¶ 6, 75 P.3d 883, 885. Questions of law are reviewed by a de novo standard. *Fanning v. Brown*, 2004 OK 7, ¶ 8, 85 P.3d 841, 845. Under this standard, this Court has plenary, independent, and non-deferential authority to decide the question of law. *Id.*

¶ 9 The Legislature has directed that words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, or when words are given a definition by statute. *25 O.S.2001 § 1.* The word "retained" as used in § 1009(D) is the past tense of the word retain. The common meaning and ordinary sense of the word retain is to keep or hold in one's possession or in a particular place, condition, or position. *The American Heritage Dictionary* 1054 (2nd College ed.1985).

¶ 10 Under the facts concerning the "barrel-back" arrangement as assumed true by the trial court, the producers sold the oil to Sunoco and parted with possession of it. Thereafter, the oil was kept by Sunoco in Sunoco's pipeline until it reached the market center. Even under the Tax Commission's version of the facts, the oil was not "retained" by the producers within the ordinary sense of the word.

■ ¶ 11 To be sure, "barrel-back" transactions provide an opportunity to producers to market oil and obtain a higher price than the field price upon which gross production taxes are based. It is also obvious that the Tax Commission regards this as a "loophole" to avoid taxation. The fact that the "barrel-back" transactions provide such an opportunity or even a tax "loophole" is not justification for this Court to interpret the statute contrary to the ordinary meaning of the words used therein. Courts cannot enlarge the taxing act's ambit to make provisions applicable to cases not clearly within the Legislature's contemplation or fill lacunae (gaps) in the revenue law in a manner that would distort the enactment's plain language. *Globe Life & Accident Insurance Company v. Oklahoma Tax Commission*, 1996 OK 39,

---

**3.** Title *68 O.S.2001 § 1009* (D) states in pertinent part:

D. On oil and gas sold at the time of production, the gross production tax shall be paid by the purchaser of such products, and such purchaser shall, and is hereby authorized to deduct in making settlements with the producer and/or royalty owner, the amount of tax so paid. In the event oil is not sold at the time of production but is retained by the producer, the tax on such oil not so sold shall be paid by the producer for himself including the tax due on royalty oil not sold; provided, that in settlement with the royalty owner such producer shall have the right to deduct the amount of such tax so paid on royalty oil or to deduct therefrom royalty oil equivalent in value at the time such tax becomes due with the amount of the tax paid. The gross production tax upon asphalt, or on ores bearing lead, zinc, jack, gold, silver or copper shall be paid by the producer for himself, including the royalty interest; provided, that in settlement with the royalty owner such producer shall have the right to deduct the amount of such tax so paid on royalty asphalt, or on ores bearing lead, zinc, jack, gold, silver or copper, or to deduct therefrom royalty asphalt, or ores bearing lead, zinc, jack, gold, silver or copper, equivalent in value at the time such tax became due, to the amount of tax paid.

¶ 10, 913 P.2d 1322, 1327. As the Globe Life case points out, "the proper remedy for OTC is not to have the court's expand the ... Tax Code's scope ... but rather to press the gap's closure by the Legislature." *Id.* at ¶ 19, 913 P.2d at 1329.

■ ¶ 12 In conclusion, we hold the gross production tax law as written by the Legislature does not subject the producers' buy-back of oil and resale at the market center to taxation. In the absence of tax liability on the part of the producer, there can be no tax liability for Sunoco to share or jointly incur. This conclusion is dispositive of the Tax Commission's claim for additional taxes both on the direct sales between the producers and Sunoco and on the settlement paid by Sunoco in the royalty owners' case. To the extent that the "barrel-back" arrangements present a "loophole" in the gross production tax law, such transactions must be made subject to taxation by a clear, affirmative declaration of the Legislature and not by implication through judicial construction.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT AFFIRMED.**

¶ 13 EDMONDSON, C.J., HARGRAVE, OPALA, WATT, WINCHESTER, COLBERT, and REIF, JJ., concur.

¶ 14 KAUGER, J., concurs in result.

¶ 15 TAYLOR, V.C.J., dissents.