2017 OK 60

**In the MATTER OF the Income Tax PROTEST OF Bill HARE, Jr.**

**Bill Hare, Jr. Appellant,**

**v.**

**Oklahoma Tax Commission, Appellee.**

**Case No. 114,893**

Supreme Court of Oklahoma.

FILED JUNE 27, 2017

Kevin B. Ratliff, Steven C. Davis, Len Cason, Hartzog, Conger, Cason & Neville, Oklahoma City, Oklahoma, Appellant Bill Hare, Jr.

Majorie Welch, Elizabeth Field, Taylor Ferguson, Oklahoma City, Oklahoma, Appellee Oklahoma Tax Commission

GURICH, V.C.J.

### Facts & Procedural History

¶1 In November 2004, Oklahoma voters passed State Question 713–Legislative Referendum 336, which implemented certain changes to the Oklahoma Tax Code. The new enactment included an income tax deduction for net capital gains derived from in-state

property and business sales. The title of the new measure explained that it was amending 68 O.S. 2001 § 2358 and, inter alia, "providing [an] exemption for certain earnings of individual taxpayer[s]." Specifically the law authorized a deduction for selected capital gains that were included in a taxpayer's federal adjusted gross income for the relevant taxable year. Originally codified at 68 O.S.Supp. 2004 § 2358(E),[1] the new deduction was available for "taxable years beginning after December 31, 2004."

¶2 In 2007, the Oklahoma Legislature adopted Senate Bill 685, which contained changes to 68 O.S. § 2358. Although the effective date of the bill was January 1, 2008, the statute retained its introductory language, which provided it was applicable to tax returns filed after December 31, 2004. The 2007 Legislative Summary proclaimed one of the primary objects of S.B. 685 was to "[c]larif[y] the income tax exemption for certain capital gains."[2] In a Fiscal Impact Statement provided to the State Board of Equalization, the Oklahoma Tax Commission explained the legislative effect of S.B. 685 as follows:

> This section modifies the Oklahoma Capital Gain deduction to clarify holding period requirements as well as the treatment of capital gains that arise when intangible assets are sold. With respect to the holding periods, they are now to include any additional period when the property was held by another individual or entity, if such additional period is included in the taxpayer's holding period for the asset pursuant to the Internal Revenue Code. *This section also clarifies that the capital gain deduction is available under certain circumstances when intangible assets are sold.* (Emphasis added) [3]

OTC anticipated zero impact to state revenue in connection with the legislative change.

¶3 Bill Hare, Jr. was a two percent (2%) owner of Briggett, Inc. and Briggett Transportation, Inc. (collectively Companies). Hare acquired his ownership interest in Companies in 1983. Both entities were Oklahoma S-corporations; therefore, income, losses, deductions, and credits were passed through to shareholders for inclusion on their individual tax returns. On September 10, 2007, Companies sold substantially all of their assets to High Sierra Energy, LP in accordance with a Purchase and Sale Agreement. The sale of Companies' assets included both tangible and intangible property interests.

¶4 In 2008, Hare filed a U.S. Individual Income Tax Return and an Oklahoma Resident Income Tax Return for tax year 2007. Both returns included pass-through income from the sale of Companies' assets. Hare designated the income as a capital gain on his federal return. His Oklahoma return listed an adjusted gross income (AGI) of $10,271,884.00. However, no net capital gain deduction was claimed on the original Oklahoma return, and Hare's total tax liability for 2007 was $539,431.00.

■ ¶5 In 2012, Hare filed an Amended U.S. Individual Tax Return (1040X). The amended return reduced Hare's AGI due to proceeds attributable to Companies' sale which were held in escrow and were not constructively received until after the 2007 tax year.[4] Subsequently, Hare also filed a form 511X Oklahoma Amended Resident Income Tax Return, noting the reduced federal AGI and claiming an "omitted capital gain deduction" of $5,691,896.00. With the deduction Hare's amended return reflected an Oklahoma adjusted gross income of $3,704,988.00. The return also showed a tax overpayment and refund due in the amount of $371,036.00.

---

1. The Legislature amended § 2358 in 2005, resulting in the net capital gain deduction in subsection (E) being redesignated as § 2358(F). 2005 Okla. Sess. Laws, Ch. 381, § 12, p. 1673.

2. Orig. Rec., Vol. 3, p. 641.

3. Orig. Rec., Vol. 3, p. 671.

4. The constructive receipt doctrine requires a taxpayer to recognize income when the taxpayer has an unqualified, vested right to receive immediate payment of income. Reed v. C.I.R., 723 F.2d 138, 142 (1st Cir. 1983); see also In re Cook's Trust, 1943 OK 96, ¶7, 192 Okla. 291, 135 P.2d 492, 494. Because Hare did not have a right to the sum in escrow until after 2007, it was excluded from his AGI on the amended return.

¶ 6 On September 18, 2012, OTC sent an adjustment letter to Hare notifying him that the agency had disallowed the net capital gain deduction—specifically, OTC denied those amounts connected to the sale of Companies' goodwill. OTC adjusted Hare's amended return, but approved a refund of $52,383.00.[5] On November 5, 2012, Hare timely filed a formal protest of OTC's adjustment and requested a refund of the $318,643.00 tax overpayment.

¶ 7 In connection with the protest proceeding, Hare filed a Motion for Summary Disposition on September 1, 2015.[6] On October 23, 2015, OTC filed Division's Response to Taxpayer's Motion for Summary Disposition, Counter Motion for Summary Disposition, and Brief in Support. Hare filed a reply to OTC's response on November 6, 2015. None of the material facts were disputed.

¶ 8 On March 1, 2016, the assigned administrative law judge filed his Findings, Conclusions, and Recommendations. Those pronouncements central to our review of this case are as follows:

- Hare realized a net capital gain (as defined under Internal Revenue Code § 1222(11)) of $5,691,896.00 following the sale of substantially all of Companies' assets;[7]

- As S-corporations, Companies' were pass-through entities for tax purposes;[8]

- Title 68 O.S.Supp. 2006 § 2358 does not define the phrase "Oklahoma company," but this generally includes corporations, partnerships, associations, joint-stock companies, trust funds, or organized groups of individuals, whether incorporated or not;[9]

- OTC administrative decisions and unpublished Court of Civil Appeal opinions have previously construed § 2358, finding the statute is not ambiguous;[10]

- The 2007 amendment to § 2358 did not meet the criteria for retroactive application;[11]

- 68 O.S.Supp. 2006 § 2358(F) did not include a deduction or exclusion for intangible personal property such as goodwill for tax year 2007.[12]

The ALJ determined OTC's motion for summary disposition should be sustained; and consequently, Hare should be denied a net capital gain deduction for the sale of Companies' goodwill. On March 24, 2016, OTC entered an order adopting the ALJ's findings of fact and legal conclusions. Hare appealed the decision, and we retained the case.

### Standard of Review

¶ 9 When OTC acts in its adjudicative capacity, its orders will be affirmed on appeal if the record contains substantial evidence supporting the facts upon which the order is based and the order is free from legal error. Am. Airlines, Inc. v. State, ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 25, 341 P.3d 56, 62. Whether Hare qualified for the capital gain tax deduction requires us to interpret the relevant language in 68 O.S.Supp. 2006 § 2358(F). Our interpretation of a tax statute involves solely a legal issue which calls for de novo review. Id.

### Analysis

*The sale of Briggett, Inc. and Briggett Transportation, Inc. goodwill qualified as the sale of an indirect ownership interest in an Oklahoma company for purposes of 68 O.S.Supp. 2006 § 2358(F).*

¶ 10 When construing statutes, it is this Court's obligation to ascertain legislative intent. Russell v. Chase Inv. Servs. Corp., 2009 OK 22, ¶ 20, 212 P.3d 1178, 1185. Words in a statute are to be construed according to

---

5. OTC recognized an $875,000 reduction in Hare's AGI based on the escrow funds he received after tax year 2007.

6. By order dated June 4, 2013, the case was held in abeyance to await the outcome of another case involving the same issues.

7. Orig. Rec., Vol. 6, p. 1428.

8. Orig. Rec., Vol. 6, pp. 1435–36.

9. Orig. Rec., Vol. 6, p. 1435.

10. Orig. Rec., Vol. 6, pp. 1442–43.

11. Orig. Rec., Vol. 6, p. 1444.

12. Orig. Rec., Vol. 6, pp. 1447.

their plain and ordinary meaning unless it is clear the legislature intended a different meaning. Fanning v. Brown, 2004 OK 7, ¶ 10, 85 P.3d 841, 845–46. Rules of construction are not utilized if the language in a statute is unambiguous. Lang v. Erlanger Tubular Corp., 2009 OK 17, ¶ 8, 206 P.3d 589, 591.

¶ 11 We begin our analysis with an examination of 68 O.S.Supp. 2006 § 2358(F), which, at the time Companies' assets were sold, read:

F. 1. For taxable years beginning after December 31, 2004, a deduction from the Oklahoma adjusted gross income of any individual taxpayer shall be allowed for qualifying gains receiving capital treatment that are included in the federal adjusted gross income of such individual taxpayer.

2. As used in this subsection:

a. "qualifying gains receiving capital treatment" means the amount of net capital gains, as defined in Section 1222(11) of the Internal Revenue Code, included in an individual taxpayer's federal income tax return that result from:

(1) the sale of real or tangible personal property located within Oklahoma that has been directly or indirectly owned by the individual taxpayer for a holding period of at least five (5) years prior to the date of the transaction from which such net capital gains arise, or

(2) the sale of stock or the sale of a direct or indirect ownership interest in an Oklahoma company, limited liability company, or partnership where such stock or ownership interest has been directly or indirectly owned by the individual taxpayer for a holding period of at least three (3) years prior to the date of the transaction from which the net capital gains arise,

b. "holding period" means an uninterrupted period of time, and

c. "Oklahoma company," "limited liability company," or "partnership" means an entity whose primary headquarters have been located in Oklahoma for at least three (3)

uninterrupted years prior to the date of the transaction from which the net capital gains arise.

d. "direct" means the individual taxpayer directly owns the asset,

e. "indirect" means the individual taxpayer owns an interest in a pass-through entity (or chain of pass-through entities) that sells the asset that gives rise to the qualifying gains receiving capital treatment.

(1) With respect to sales of real or personal property located within Oklahoma, the deduction described in this subsection shall not apply unless the pass-through entity that makes the sale has held the property for not less than five (5) uninterrupted years prior to the date of the transaction that created the capital gain, and each pass-through entity included in the chain of ownership has been a member, partner, or shareholder of the pass-through entity in the tier immediately below it for an uninterrupted period of not less than five (5) years.

(2) With respect to sales of stock or ownership interest in an Oklahoma company, limited liability company, or partnership, the deduction described in this subsection shall not apply unless the pass-through entity that makes the sale has held the stock or ownership interest for not less than two (2) uninterrupted years prior to the date of the transaction that created the capital gain, and each pass-through entity included in the chain of ownership has been a member, partner or shareholder of the pass-through entity in the tier immediately below it for an uninterrupted period of not less than two (2) years. For purposes of this division, uninterrupted ownership prior to the effective date of this act shall be included in the determination of the required holding period prescribed by this division.

OTC does not dispute that the sale of Companies' goodwill resulted in a net capital gain which was included on Hare's federal income tax return.[13] Because the transaction in this

---

**13.** Section 1222(11) defines net capital gains as "the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year." Long-term capital gains are those gains stemming from "the sale or exchange of a capital asset held for more than 1 year, if

case involved the sale of Companies' assets rather than stock, the dispositive issue is whether Hare's capital gain resulted from the "sale of a direct or indirect ownership interest in an Oklahoma company" per § 2358(F)(2)(a)(2).

¶ 12 Hare raised two principal arguments in his tax protest case. First, he claimed that even before the 2007 amendment to 68 O.S.Supp. 2006 § 2358, when Companies sold "substantially all [their] assets, the sale [was] of an indirect ownership interest in an Oklahoma company."[14] Thus, under the original language of 68 O.S.Supp. 2006 § 2358(F), Hare maintained he was entitled to a deduction for the net capital gains connected to Companies' goodwill. Second, Hare argued the 2007 amendments to § 2358(F) were merely clarifications, designed to carry out the original legislative purpose; as a result, Hare asserted the changes are entitled to retrospective application.

¶ 13 OTC countered, asserting that when Companies sold all of their assets, § 2358(F) only allowed a deduction for capital gains originating from the sale of (1) real property; (2) tangible personal property; (3) stock; or (4) an equity interest in an Oklahoma business. OTC further argued that under the version of the statute in effect in September 2007, net capital gains generated by the sale of intangible personal property (i.e., Companies' goodwill) did not qualify for the § 2358(F) deduction.[15] However, this contention is clearly flawed because stock itself is classified in Oklahoma as intangible property, yet still entitled to the deduction under

§ 2358(F).[16] Finally, OTC disputed Hare's claim that the Legislature's 2007 changes would be entitled to retroactive application.

¶ 14 Although the terms direct and indirect are defined in § 2358, the statute offers no definition for "ownership interest." Thus, we will read the statute by giving its undefined terms their plain and ordinary meaning. Lumber 2, Inc. v. Illinois Tool Works, Inc., 2011 OK 74, ¶ 15, 261 P.3d 1143, 1147. Ownership is defined as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." Black's Law Dictionary (10th ed. 2014). Interest is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property (right, title, and interest)." Black's Law Dictionary (10th ed. 2014). Arguably, the deduction under 68 O.S.Supp. 2006 § 2358(F)(2)(a)(2) was available when Hare sold his financial stake in Companies—regardless of how the transaction was structured (i.e., whether he sold the stock or his "interest" in Companies' assets). However, the Legislature's inclusion of the terms "direct or indirect" preceding "ownership interest" eliminates any question about Hare's entitlement to the deduction. We believe § 2358(F)(2)(a)(2) clearly allowed a net capital gain deduction for either the sale of stock/equity or company assets.

¶ 15 In its response to Hare's motion for summary judgment, OTC consciously disregarded the terms "direct or indirect" and the impact of those terms on the sale of an ownership interest. By overlooking the phrase "direct or indirect ownership inter-

and to the extent such gain is taken into account in computing gross income." Id. Title 26 U.S.C.A. § 1221, written in the negative, identifies specific property which are *not* considered capital assets. Federal jurisprudence is clear—business goodwill is considered a capital asset under § 1221 and the proceeds from its sale are taxable as a capital gain. Patterson v. C.I.R., 810 F.2d 562, 569 (6th Cir. 1987) (explaining "any amount paid for goodwill, since it does not waste, becomes a nonamortizable capital asset ... taxed at the more favorable capital gains rates."). Any proceeds arising from the sale of Companies' goodwill were net capital gains under the IRC for purposes of the first prong of § 2358(F)(2)(a).

**14.** Taxpayer's Motion for Summary Disposition, Orig. Rec., Vol. 1, p. 40.

**15.** Division's Response to Taxpayer's Motion for Summary Judgment, Orig. Rec., Vol. 6, p. 1391. OTC alleged in its response to summary judgment that § 2358(F) "expressly exclude[s] the general class of 'intangible personal property' through its use of the words 'real property' and 'tangible personal property.'"

**16.** See 30 O.S. 2001 § 1-111(14); 60 O.S. 2001 § 651(9)(c); 68 O.S. 2001 § 1209(d); see also Sunray Oil Corp. v. Okla. Tax Comm'n, 1943 OK 80, ¶ 6, 192 Okla. 159, 134 P.2d 995, 996-97 (noting "[s]hares of stock are intangible personal property"). For purposes of sales and use tax, OTC's own regulations recognize stock as a form of intangible personal property. See OAC 710:65-1-2.

est" OTC significantly changed the meaning of the § 2358(F)(2)(a)(2).[17] The statute unmistakably distinguishes between the two types of ownership interests. Section 2358(F)(2)(e) & (d) provide that "direct means the individual taxpayer directly owns the asset," while "indirect means the individual taxpayer owns an interest in a pass-through entity (or chain of pass-through entities) that sells the asset that gives rise to the qualifying gains receiving capital treatment." In other words, selling an indirect ownership interest is synonymous with selling a *pass-through entity's assets.*[18] Section 2358(F)(2)(a)(2) places no limitations on what particular pass-through company assets qualify for the capital gain deduction—the only limitation is that any earnings realized must qualify for capital gain treatment under the IRC. Because Companies were S-corporations, pass-through entities for purposes of taxation, the sale of Companies' assets amounted to the sale of an indirect ownership interest under § 2358(F)(2)(a)(2). Hare maintained his ownership interest for more than three (3) years preceding the sale of Companies' assets. Therefore, OTC erred by disallowing the full net capital gain deduction claimed on Hare's 2007 amended Oklahoma return.

### *Title* 68 O.S. § 2358(F)(2)(a)(3) *was enacted by the Legislature in 2007 in response to OTC's interpretation of the law.*

¶ 16 Although our holding is not premised on a finding that the 2006 version of 68 O.S. § 2358(F) was ambiguous, our interpretation of the statute is bolstered by the Legislature's 2007 amendment. As noted, the Legislature directly addressed OTC's construction of the law by amending 2358, by adding subsection (F)(2)(a)(3):

\* \* \* \*

(3) the sale of real property, **tangible personal property or intangible personal** property located within Oklahoma as part of the sale of all or substantially all of the assets of an Oklahoma company, limited liability company, or partnership or an Oklahoma proprietorship business enterprise where such property has been directly or indirectly owned by such entity or business enterprise or owned by the owners of such entity or business enterprise for a period of at least two (2) years prior to the date of the transaction from which the net capital gains arise. (Emphasis added)

¶ 17 We agree with Hare that the 2007 legislative changes to 68 O.S. §. 2358(F) were intended to clarify the original enactment and to carry out the law's original purpose. In amending the statute, the Legislature retained the introductory paragraph to § 2358(F), which kept the statute controlling for all individual tax returns filed in "taxable years beginning after December 31, 2004." Legislative summary materials similarly noted that S.B. 685 "clarifies the income tax

**17.** In its response to Hare's motion for summary judgment and answer brief, OTC never addressed how the terms direct and indirect impact "ownership interest" under § 2358(F)(2)(a)(2). Silence on the issue is very telling. For example, if the sale of an individual's ownership interest (equity as opposed to assets) in a partnership or LLC is the equivalent of selling an indirect ownership interest, when would a direct ownership interest ever be implicated? Additionally, LLCs and partnerships are inherently pass-through entities; thus, in order for § 2358(F)(2)(a)(2) to read sensibly, a sale of an indirect ownership interest can only mean the selling of a pass-through entity's assets. Had the Legislature intended to limit the deduction to only sales of an equity interest, there would have been no need to include the terms direct or indirect. For all words in the § 2358(F) to have significance, the sale of stock or other equity interest (LLC unit, partnership interest, etc.) can only be read as the equivalent of selling a "direct ownership interest;" likewise, the sale of company assets by a pass-through entity means the selling an "indirect ownership interest." When interpreting a statute, it is axiomatic that every word be given effect and terms should not be ignored or given zero meaning. Globe Life and Acc. Ins. Co. v. Okla. Tax Comm'n, 1996 OK 39, ¶ 15, 913 P.2d 1322, 1328.

**18.** Although not defined in § 2358(F), the term asset means "1. An item that is owned and has value. 2. The entries on a balance sheet showing the items of property owned, including cash, inventory, equipment, real estate, accounts receivable, and goodwill." Black's Law Dictionary (10th ed. 2014). For purposes of the statute, we read "asset" to include stock, LLC membership unit, partnership interest, or the actual tangible and intangible property owned by a particular business (i.e., trucks, machinery, accounts receivable, goodwill, etc.).

exemption for certain capital gains." Even OTC's Fiscal Impact Statement explained the amendment was for the purpose of "clarifying that the capital gain deduction is available under certain circumstances when intangible assets are sold." The 2007 changes to § 2358(F) solidify this Court's belief that the Legislature always intended to afford a deduction for net capital gains arising out the sale of an Oklahoma company's assets, including goodwill.

## Conclusion

¶ 18 The net capital gain deduction in 68 O.S.Supp. 2006 § 2358 "was passed by the Legislature to promote significant business investment in Oklahoma's economy." See CDR Sys. Corp. v. Okla. Tax Comm'n, 2014 OK 31, ¶ 25, 339 P.3d 848, 856. OTC's construction of § 2358 treated taxpayers disparately depending on how a business interest was sold. Had the sale of Companies been structured as an equity sale, Hare would have undoubtedly been entitled to the full capital gain deduction, despite the stock's value being based largely on goodwill. There is no rational justification for allowing a deduction for the sale of stock but denying the same tax benefit when a transaction involves the sale of company assets. When Companies' sold substantially all of their assets, including goodwill, Hare sold an indirect ownership interest which qualified for the capital gain deduction. Accordingly, we hold OTC erroneously denied Hare the net capital gain deduction, and the agency decision is hereby reversed.

**OKLAHOMA TAX COMMISSION ORDER NO. 2016-003-24-04 IS REVERSED**

¶ 19 ALL JUSTICES CONCUR